## Middendorf, Clerk, etc. v. Goodale, et al., Trustees.

(Decided November 13, 1923.)

### Appeal from Kenton Circuit Court (Criminal, Common Law and Equity Division).

1. Evidence—Common Knowledge that Persons of Small Means Build Houses Through Loan Associations.—It is a matter of common knowledge that thousands of persons of small means throughout the United States, by membership in, and loans obtained from, building and loan associations, have been enabled to become the owners of homes, who, but for such assistance, would or might not have done so.

2. Taxation—Tax for Recording Mortgages a "Privilege Tax," and Not "Property Tax," and Unrecorded Mortgage Enforceable.—The recording tax imposed by Ky. Stats., section 4019a-9, is a "privilege tax" under Constitution, section 181, and not a "property tax" under Constitution, section 171, and is imposed upon the privilege of recording mortgages and instruments creating like liens, and failure to record the mortgage and pay the tax will neither invalidate the mortgage nor prevent its enforcement against all except purchasers without notice and creditors, in view of Ky. Stats., section 496.

3. Taxation—Payment of Property Tax Not Optional, and Result of Failure to Pay is Seizure and Sale.—Under Constitution, section 171, payment of property tax is not optional with the person against whom or whose property it is assessed, and if not voluntarily made within a given time the property taxed may, after the necessary advertisement, be summarily seized and sold by the tax collector for the tax due and costs of sale, together with the penalty imposed.

4. Statutes—Taxation—Exemption of Certain Mortgages from Recording Tax does Not Constitute Unjust Discrimination, Grant Exclusive or Separate Public Emolument or Make Statute Special Act Authorizing Tax.—Ky. Stats., section 4019a-9, imposing a tax on recording of mortgages, but exempting mortgages where the debt does not mature within five years and mortgages to building and loan associations, does not violate Constitution, section 171, as amended 1914-15, requiring that taxes shall be uniform, or Constitution, Bill of Rights, section 3, relating to grants of exclusive separate public emoluments, or Constitution, section 59, prohibiting local or special acts to authorize or regulate the assessment or collection of taxes.

5. Constitutional Law—Taxation—Exempting Certain Mortgages from Recording Tax does Not Deny Equal Protection of the Laws.—Ky. Stats., section 4019a-9, imposing tax on recording of mortgages but exempting mortgages where the debt does not mature within five years and mortgages to building and loan associations, does not violate Constitution U. S. Amend. 14, art. 1, respecting equal protection of the laws.

CHAS. I. DAWSON, Attorney General, for appellant.

MACKOY & MACKOY for appellees.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

The sole question presented for decision on this appeal is, whether a certain typewritten instrument marked "exhibit A," appearing in the record, is subject to the recording tax of 20 cents upon each $100.00 or fraction thereof of indebtedness, secured thereby, imposed by Kentucky Statutes, section 4019a-9 (Carroll's edition 1922) and, by its provisions, required to be paid the county clerk in whose office the instrument is first recorded, when it is lodged for record.

The parties to the writing in question are the appellees, Levi C. Goodale and others, acting as trustees of the Cincinnati Southern Railway of the one part, and the Cincinnati, New Orleans and Texas Pacific Railway Company of the other. It will be unnecessary to explain the scope or meaning of the many stipulations and

covenants contained in this voluminous writing further than to say, that while much of it relates to the sale or leasing to one of the parties by the other of the property therein described and the reciprocal duties and obligations thereby imposed upon both, it is admittedly and undoubtedly a mortgage given upon the same property to secure the payment of the large indebtedness therein mentioned.

Following its execution the instrument was delivered by the appellees to the appellant, John W. Middendorf, clerk of the Kenton county court, in his office, with the request that it be duly recorded by him, accompanied by a tender of the required legal fees for the filing and recording of same; the latter refused, however, to receive or record the instrument without the prepayment by appellees of the tax required by the statute, *supra*, which they refused to pay. Immediately thereafter this action was brought against the appellant by the appellees in the court below, for the procurement of a writ of mandamus compelling him to record, without the payment by the appellees of the tax imposed by the statute, *supra*, the instrument of writing lodged with him by the latter for that purpose. The appellant filed in the court below a general demurrer to the petition as amended, which the court overruled; and upon his excepting to this ruling and refusing to further plead, the court entered judgment granting the appellees the writ of mandamus prayed in the petition. The appellant's complaint of this judgment and of the court's previous overruling of his demurrer to the petition, resulted in the granting to him and his prosecution of the present appeal.

Although the judgment rendered in the court below fails to indicate the reasons, or any of them, actuating that court's granting of the writ of mandamus prayed by the appellees, it is manifest from the record and conceded by counsel, that it was because of its concurrence in the objections, or some of them, urged by the latter to the constitutionality of the section of the statute, *supra*, under which the appellant claimed authority to collect the tax demanded by him of the appellees. The objections made in that court and yet urged, to the constitutionality of the section, by the appellees, are stated by the brief of their counsel as follows:

"(1) That it violates section 171, Constitution, as amended in 1914-1915, which requires that taxes

'shall be uniform upon all property of the same class subject to taxation within the territorial limits of the authority levying the tax; and all taxes shall be levied and collected by general laws.' (2) That it violates section 3, Bill of Rights, Constitution, which provides that 'no grant of exclusive, separate, public emoluments shall be made to any man or set of men, except in consideration of public services.' (3) That it violates section 59, Constitution, which prohibits the general assembly from passing any local or special act to 'authorize or to regulate the levy, the assessment or the collection of taxes.' (4) That it violates article 1 of the fourteenth amendment to the Constitution of the United States, in that it denies to all persons within the jurisdiction of the state of Kentucky the equal protection of the laws of the state.''

The section of the statute in question reads as follows:

"4019a-9. Mortgage Recording Tax. The word 'mortgage' as used in this section shall include any instrument creating or evidencing a lien of any kind upon property given or taken as security for debt and shall include vendor's liens and executory contracts for the sale of property under which the vendee is entitled to the possession thereof.

"A tax of twenty (20) cents is hereby imposed upon each one hundred dollars ($100.00) or fraction thereof of indebtedness which is, or may be, in any contingency secured by any mortgage of property in this state, which mortgage shall be lodged for record after this act goes into effect where the indebtedness does not mature within five years. If any such mortgage includes property outside of the state such tax shall be imposed upon such proportion of the whole debt secured thereby as the value of the property in this state included therein bears to the whole of the property included therein. The county clerk first receiving such instrument for record shall determine the amount of such tax from affidavits of the mortgagor or its officers as to such proportionate value or from other satisfactory evidence.

"If a mortgage is made to a mortgagee in trust to secure the payment of bonds or other obligations to be issued thereafter, a statement may be incor-

porated therein of the amount and description of such obligations already issued or to be issued forthwith, and the tax to be paid on filing such mortgage for record or registration shall be computed upon the amount so stated. Such statements shall be binding and conclusive upon all persons claiming through or under the mortgage, and no additional obligations shall be issued or certified by the trustee until the additional tax thereon shall have been paid and the receipt of the proper county clerk issued therefor and recorded upon the margin of the record of said mortgage.

"If any such mortgagor shall issue or if any such trustee shall certify or aid in the issuance of any such obligations without the payment of the tax as herein provided, they shall each be subject to a penalty of five times the amount of such tax that should have been paid.

"The tax imposed by this act shall be paid to the clerk of the county court in whose office said mortgage is first lodged for record at or before the time of lodging same for record. The clerk shall thereupon endorse his receipt upon said instrument and such receipt shall be recorded with said instrument and shall be conclusive proof of the payment of said tax and shall authorize the further record of such instrument in any other county without repayment of such tax. The form of such receipt shall be in substance: 'Recording tax hereon of........................ dollars paid.'

"The clerk on or before the tenth day of each month (shall) transmit to the auditor the amount of such taxes collected by him within the preceding calendar month, less the amount of his commission now allowed him on collections of revenue. And the entire revenue from the mortgage recording tax shall be credited to the sinking fund.

"The recording tax herein provided shall be in addition to the annual tax for state purposes provided in the preceding sections of this act; provided, however, the recording tax herein provided shall be the only tax paid on mortgages beneficially owned by persons or corporations not resident in this state; provided, however, the provisions of this section shall not apply to mortgages executed to building and loan associations."

It will be observed from the foregoing statement of them that the objections of the appellees to the constitutionality of the section of the statute, *supra*, are all bottomed upon the meaning and effect they insist should be given to the exception contained in its concluding clause, which declares that "the provisions of this section shall not apply to mortgages executed to building and loan associations."

It is argued by counsel for the appellees that this provision placing mortgages executed to building and loan association in a distinct class and exempting them from the payment of the mortgage recording tax imposed by the preceding provisions of the same section upon all other mortgages and instruments creating liens as security for debt, is not a reasonable classification; and, the exception, it is insisted, makes the entire section repugnant to the state and federal constitutions in the particulars set forth in the appellees' several above contentions, and therefore renders the whole thereof void.

So the important question to be determined is, whether the provision contained in the last clause of the section of the statute in question, by which mortgages executed to building and loan associations are exempted from the tax imposed by the previous provisions thereof, is a reasonable classification or regulation not prohibited by the state or federal constitution, or should be declared an artificial or capricious one violative of both of those instruments, as insisted by the appellees.

In undertaking the consideration of this question, it will be necessary to understand the object and functions of the building and loan association, and wherein the mortgage executed to it is distinguishable from all other mortgages. The distinguishing characteristics of such associations are clearly pointed out by the statute authorizing their incorporation and encouraging their existence, many of the provisions of which even specify the particular methods by which their business shall be conducted and all being designed for the protection of their members alone. Thus by section 854, Kentucky Statutes, it is provided:

> "A building and loan association, to be entitled to the benefits of this act, and to be known and designated as such, shall receive payments *from members only*, and make loans to *members only* on the plan herein set forth."

By section 865 of the statute, *supra,* it is provided:

"The money accumulated, after due allowance made for necessary and proper expenses and for the withdrawal of shares, shall at each monthly or weekly meeting be offered to *members* according to their priority or right to a loan, as fixed by the by-laws. Each member whose application for a loan has been approved shall be entitled, upon giving property security and complying with the by-laws, to receive a loan equal to the par value of each share held by him, or such fractional part as the by-laws allow."

Endlich in his work on building and loan associations (section 283), speaking of the proper and legitimate purposes of the creation of such corporations, says:

"To all practical intents it may be said to be to enable a number of associates to combine and invest their savings to mutual advantage, so that from time to time any individual among them may receive, out of the accumulation of the pittances which each contributes periodically, a sum by way of loan, wherewith to buy or build a house, mortgage it to the association as security for the money borrowed, and ultimately making it his own by paying off the encumbrance out of his subscription." Rhodes v. Missouri Savings and Loan Company, 173 Ill. 621.

In Eversman v. Schmidt, 53 Ohio State Rep. 174, in discussing the aims and methods of such associations the court, in part, said:

"Mutuality is the essential principle of a building and loan association. Its business is confined to its own members; its object being to raise a fund to be loaned among themselves, or such as may desire to avail themselves of the privilege. This is done by the payment, at stated times, of small sums, in the way of dues, interest on loans and premiums on loans."

It is patent from what has been said that the object of the legislature in enacting the statute, *supra,* was to provide the members of building and loan associations with a means of borrowing money for the acquisition of homes on the most favorable terms. The statute, therefore, is a manifest recognition by the legislature of the duty of the state to encourage the acquisition of homes

by its citizens. Certainly the object is one to be commended, for nothing contributes in greater degree to the prosperity, happiness and patriotism of its citizenship, and the stability of its government, than does the ownership by the latter of homes; and it is a matter of common knowledge that thousands of persons of small means throughout the United States, by membership in and loans obtained from building and loan associations, have been enabled to become the owners of homes, who, but for such assistance, would or might not have done so.

Additional recognition by the legislature of the necessity of encouraging building and loan associations to continue in the business of assisting persons of limited means in acquiring the ownership of homes, is manifested by its passage of chapter 14, Acts of General Assembly, special session 1917, which classifies building and loan associations for the purpose of *ad valorem* taxation. Briefly stated this act, by its provisions, imposes a tax, of one dollar on each one thousand dollars of the capital stock of such associations held by non-borrowing members and by members whose loans do not equal the amount paid in by them. The value of the capital stock is ascertained by taking into consideration its surplus and undivided profits, the amount paid in on shares and its mortgages, notes and other credits. The act exempts the association from the payment of local taxes upon its capital stock, surplus, undivided profits, notes, mortgages or other credits, and provides that the capital stock tax shall be in lieu of all other taxes for state purposes on the association property. It cannot be questioned that by the provisions of the act, *supra,* building and loan associations were placed in a separate class for taxation, exempted entirely from local taxation and required to pay a tax of only ten cents on the one hundred dollars for state purposes. The incentive for this legislation evidently was the desire and purpose of the legislature to encourage the organization of building and loan associations for their use in enabling the members thereof to secure the ownership of homes; hence in framing the act, *supra,* it seems, as argued by the attorney general, to have "proceeded upon the theory that the smaller the burden of taxation, the greater would be the ability of these associations to serve the purpose which the legislature had in mind of enabling their members to acquire homes for themselves."

It is further patent that at the time of the enactment of the statute imposing the mortgage recording tax, which is the only statute attacked in this case, the legislature again manifested its solicitude in behalf of the building and loan associations by exempting them from the payment of the tax thereby required, lest it prove such a burden as would lessen their ability to carry out the purposes designed by their creation. For it goes without saying, that if a mortgage recording tax were required to be paid upon mortgages executed to building and loan associations, its payment in every instance would be exacted by the association of the borrowing member, the effect of which would be to make the loan more burdensome to the latter. On the other hand, if paid by the association it would be paid out of dues, etc., received of its members, and the considerable number of mortgages that would be taken by the association and upon each of which it would pay the recording tax would, at intervals, appreciably reduce the fund out of which loans would otherwise be made to its borrowing members.

Our consideration of section 4019a-9, Kentucky Statutes, has brought us to the conclusion that the tax imposed by it is a privilege tax; that is, a tax imposed upon the privilege of recording mortgages and instruments creating like liens, the payment of which is entirely optional with the owners or holders thereof. The owner or holder of the mortgage may, or may not, have it recorded; but if he puts it to record he must pay the recording tax imposed by the statute. If it is not recorded, he will not be required to pay the tax. His failure to record the mortgage and pay the tax will neither invalidate the mortgage nor prevent its enforcement by him as against the mortgagor and all others, except purchasers, without notice, and creditors; but to make its validity invulnerable to attack from such purchasers and creditors, he must have it recorded as required by section 496, Kentucky Statutes, which provides:

"No deed, deed of trust or mortgage, shall be valid against a purchaser for a valuable consideration, without notice thereof, or against creditors, until such deed or mortgage shall be acknowledged or proved according to law and lodged for record."

The mortgage when recorded gives notice, beginning with the date it was lodged for record, to the world of its existence and contents. It is, however, the privilege of

the owner of the mortgage either to have it recorded and thereby secure the full protection of his rights thereunder, as contemplated by section 496, of the statute, *supra,* or to decline to record it and thereby assume such risks as might result in injury to his rights. But if his exercise of this option results in the recording of the mortgage, the tax imposed by the statute for this privilege, which is twenty cents on each one hundred dollars of indebtedness secured by the mortgage, must be paid when the mortgage is lodged or filed for record, to the clerk of the county court in whose office it is to be recorded.

Another distinguishing feature of the mortgage recording tax is, that it is required to be paid but once; that is, when the mortgage is lodged for record; and this is so whether the ownership of the mortgage be retained by the mortgagee or other beneficiary named therein, or shall pass by assignment to another.

While what we have thus far said of the tax in question would seem sufficient to show wherein it differs from the property tax, a brief statement of the nature and characteristics of the latter tax will give emphasis to the differentiation.

In this state property taxation is authorized and, in large part, regulated by section 171, Constitution, as amended, which in part provides:

> "The legislature shall provide by law an *annual tax,* which with other resources shall be sufficient to defray the estimated expenses of the Commonwealth for each fiscal year. Taxes shall be levied and collected for public purposes only and shall be uniform upon all property of the same class subject to taxation within the territorial limits of the authority levying the tax."

The property tax is ordinarily an *ad valorem* tax, but whatever its form, it is levied by virtue of an assessment, and payable annually; that is, a tax which must be paid, on the property subject to taxation, by the owner, year by year; and this annual burden of taxation will rest on the property so long as it exists and remains within the territorial limits of the authority levying the tax. And this would be so, even if the ownership of the property were changed, as in that event the tax would have to be paid by the person owning it when the tax was

assessed and levied. It is likewise true of the property tax that its payment is not optional with the person against whom, or whose property, it is assessed. Its payment is compulsory and if not voluntarily made in a given time, the property taxed may, after the necessary advertisement, be summarily seized and sold by the tax collector for the tax due and costs of sale, together with the penalty imposed by the statute for its nonpayment within the required period.

While this court has not heretofore been directly called upon to decide whether the tax in question is a privilege or a property tax, courts of last resort of several other states have declared such tax a privilege tax and sustained the constitutionality of statutes imposing it, the provisions of which are substantially the same as those contained in the statute of this state under consideration. In one of these cases, Pocohontas Collieries Company v. Commonwealth, 113 Va. 108, the instrument for the recording of which the tax imposed by the Virginia statute was demanded, was a deed of trust securing the payment of certain bonds issued, or to be issued, in accordance with its provisions, and the court in setting forth the reasons supporting its conclusion that the tax was not a property, but a privilege tax, the imposition of which would not, as claimed by the appellant, violate any of the provisions of section 168, of the Virginia Constitution, or of the fourteenth amendment to the Constitution of the United States, in its opinion, in part, said:

"*In the first place, this is not a tax upon property, either within or out of the state, but a tax upon a civil privilege, that is for the privilege of availing, upon the terms prescribed by statute, of the benefits and advantages of the registration laws of the state.* Therefore, the numerous authorities cited and ably presented and argued by learned counsel for appellant, in support of the contention that the assessment and collection of the tax in question violated the said provision of the constitution of the United States, have no sort of bearing upon the issue in this case. While we have no decision by this court directly holding that a tax on the recordation of the deed is not a tax on property, in an analogous case, Eyre v. Jacobs, Sheriff, 14 Gratt. (55 Va.) 422, the court held that a collateral inheritance tax upon the succession

or transmission of property is a tax upon a civil right or privilege, and not a tax on property. Whether the tax on the recordation of a deed conveying property to the United States was a tax on property that could not be enforced against the United States, or a tax upon a mere civil right which could be so enforced, was the question presented to Hon. A. H. Garland, the then Attorney General of the United States, in October, 1887, and he advised that the tax was not upon property, but upon a civil right, and directed the payment of the tax. (Opinions of Attorney General of the U. S., vol. 18, p. 491.)

. . . A tax on property is measured in its assessment and collection in the mode prescribed by statute, while a tax upon a license or civil privilege is imposed and fixed as to amount, by classification of the persons or subjects required to pay the tax; *and the powers of the legislature to impose the latter tax, to fix the amount thereof and to classify the subjects upon which the tax is imposed, are well nigh unlimited as long as the classification is reasonable.*"

In the later case of Saville v. Virginia Railway and Power Company, 114 Va. 445, the same court after a further consideration of the statute imposing this tax, again sustained its constitutionality and declared the tax thereby imposed a privilege tax; and in so holding, what was mainly said by the court with respect to the character of the tax is contained in the following excerpt from the opinion:

"No one is requiring the Virginia Railway and Power Company to spread this indenture upon the record. It is free to do as it pleases in that respect. It would not have executed the mortgage, in the first place, but that it desired for its own advantage, to furnish the best security it could provide for the payment of its bonds and thereby enhance their value upon the market. In furtherance of this purpose, it sought the privilege of having its second mortgage spread upon the record of the chancery court of the city of Richmond, and for that privilege the state has seen fit to impose the tax which the clerk of that court demanded."

In the State v. Alabama Fuel and Iron Company, 53 L. R. A. (N. S.) 185 (66 Southern Rep. 169), it was

held by the supreme court of Alabama that a mortgage recording tax imposed by a statute of that state, quite similar in its provisions to the one we are here considering, was a privilege tax and not a property tax. And in Union Trust Company v. Com. Council of City of Detroit, 170 Mich. 692, the Michigan Supreme Court sustained the validity of the statute imposing a like tax, holding that it was permitted by the Constitution of that state to impose, as it did, such a tax in lieu of an *ad valorem* tax.

In view of the conclusion reached by the supreme court of appeals of Virginia in the earlier case of Eyre v. Jacobs, Sheriff, 14 Gratt. (55 Va.) 422, cited with approval in Pocohontas Collieries Co. v. Comlth., *supra*, that a collateral inheritance tax upon the succession or transmission of property was a tax upon a civil right or privilege, and not a tax on property, it can readily be understood why the same court in the latter case should have regarded that ruling decisive of the character of the mortgage recording tax imposed by the Virginia statute, which it held to be a like tax.

It should be here remarked that this court in the case of Booth's Exor. v. Comlth, 130 Ky. 88, sustained the constitutionality of a statute of this state authorizing the imposition of a collateral inheritance tax upon the succession or transmission of property (chap. 22, article 18, Acts General Assembly 1906, p. 240, now sec. —, Ky. Stats.) in doing which, among other things, it held that the power to tax is incident to the legislative power so that it is necessary, not that the Constitution have a provision authorizing the imposition of an inheritance tax, but that it does prohibit it; that the right to take property by inheritance or bequest is but a creature of the law, and not an absolute right of property, hence it may be regulated by the state and subjected to a tax as an incident of such regulation; and, finally, that an inheritance tax is not a "tax on property," within the meaning of section 171, Constitution, requiring uniformity and equality of taxes on all property subject to taxation, but a special or excise tax authorized by section 181, Constitution, the word "excise" being a term of such general significance as to include in its meaning "tribute, custom tax, tollage or assessment."

So it may well be said that by reason of the marked resemblance apparent in many of the essential features common to both, as well as by analogous construction,

the conclusion cannot be escaped that the mortgage recording tax and inheritance tax, though by the courts the former is called a privilege tax, and the latter a special or excise tax, are substantially identical in character; and this being so, the imposition and collection of each is authorized by section 181, Constitution, which empowers the legislature and the taxing authorities of municipalities by general laws to provide by way of taxation:

"For the payment of license fees on franchises, stock used for breeding purposes, the various trades, occupations and professions, *or a special or excise tax.*"

While it was held in Booth's Exor. v. Comlth, *supra,* that the imposition of the inheritance tax was expressly authorized by this section of the constitution, it was also declared in the opinion: "but the legislature, without this express authority, could have imposed such a tax under the general legislative power before mentioned; there being no provision of the constitution forbidding it." As expressive of our view of the scope and meaning of the phrase "the legislative power" as used in defining the authority conferred upon the General Assembly by section 29, Constitution, we adopted and made a part of the opinion the following excerpt from Cooley on Taxation, chap. 1, pp. 1-2:

"The power of taxation is an incident of sovereignty, and is possessed by the government without being expressly conferred by the people. It is a legislative power, and when the people, by their Constitution, create a department of government upon which they confer the power to make laws, the power of taxation is conferred as a part of the more general power. . . Everything to which the legislative power extends may be the subject of taxation, whether it be person or property, or possession, franchise, or privilege, or occupation or right. Nothing but express constitutional limitation upon legislative authority can exclude anything to which the authority extends from the grasp of the taxing power, if the legislature in its discretion shall at any time select it for revenue purposes; and not only is the power unlimited in its reach as to subjects, but in its very nature it acknowledges no limits, and may be carried even to exhaustion and destruction, thus

becoming in its exercise a power to destroy. If the power be threatened with abuse, security must be found in the responsibility of the legislature that imposes the tax to the constituency which must pay it. The judiciary can afford no redress against oppressive taxation, so long as the legislature, in imposing it, violates no express provision of the Constitution. The necessity for imposing it addresses itself to the legislative discretion, and it is or may be an urgent necessity, which will admit of no property or other conflicting right in the citizen while it remains unsatisfied.''

As the correctness of our conclusion that the mortgage recording tax in question is a privilege tax is, we think, sustained by the reasons stated and authorities cited in support thereof, the only question that remains to be determined is, whether it was competent for the legislature, in enacting the statute imposing the tax, to classify the persons availing themselves of the privilege of putting to record mortgages securing indebtedness, by requiring of some of them payment of the tax, and exempting others from its payment. That the legislature possessed and may exercise such power the authorities all agree, but in order for the legislation to be valid, the classification must be a reasonable one and the law be made to apply alike to all persons in the class against which it is directed.

As the inheritance tax is of the class to which the mortgage recording tax also belongs and, by analogy, what has been judicially said in sustaining its validity is equally applicable to the latter tax, with respect to complaints of its alleged inequality and want of uniformity, we in Booth's Exor. v. Comlth, *supra,* said:

''The provisions with respect to equality and uniformity found in section 171, Constitution, apply to a direct tax on property. They do not limit the power of the legislature as to the objects of taxation, but are more especially intended to prevent an arbitrary taxation of property according to kind or quality, without regard to value. We are, however, unable to see that the inequality and want of uniformity complained of by appellant exist in the statute under consideration, for every person not of the class exempted by the act from the payment of the

tax, who takes from the estate of a decedent by succession or devise, pays a tax for the privilege, and this tax is proportioned to the value of the interest which he acquires. Nor does the exemption, where the estate is of the value of $500.00 or less, constitute inequality or unjust discrimination." Magoun v. Ill. Trust & Savings Bank, 170 U. S. 283; United States v. Perkins, 163 U. S. 625; Strode v. Comlth. 52 Pa., 181; Minnot v. Winthrop, 162 Mass. 113.

The power of the legislature to classify trades, occupations, professions or persons and subjects upon which or whom it proposes to impose a special or excise tax, is well recognized in this jurisdiction and has been expressed in numerous decisions of this court. In one of these cases, Hager, Auditor, v. Walker, 128 Ky. 1, we in part said:

"We also believe that it is competent for the legislature under this section (181 Constitution), by general laws for state purposes, as well as by general law delegating the power to the municipalities mentioned, to divide trades, occupations and professions into classes and to impose a different license fee upon each class that the trade, occupation or profession may fairly and reasonably be divided into. . . Any one or more trades, occupations may be singled out for taxation, and all the others not thus selected be exempted. It will thus be seen that according to our construction of this section, it is susceptible of wide and varying application."

To like effect is the case of Strater Bros. Tobacco Co. v. Comth., 117 Ky. 604. We are unable to find in the statute imposing the tax in question either the inequality or want of uniformity charged by the appellees, for every person not of the class exempted by the act from the payment of the tax, who avails himself of the privilege, accorded by it, of having his mortgage recorded, pays the tax imposed for that privilege, which is proportioned to the value of the security thereby attained. Nor does the exemption where the mortgage debt matures within five years, nor that of building and loan associations, constitute inequality or unjust discrimination. Indeed, there is nothing unreasonable or arbitrary in the classification resulting from either of these exemptions; and

as to that of building and loan associations, we may add to what has previously been said of them and the sound public policy underlying the fostering care uniformly bestowed upon them by the legislature, that their exemption from the payment of the mortgage recording tax is not unreasonable in view of the necessity that requires the continuance of their existence by way of governmental aid. It follows from what has been said, that we find no merit in any of the appellant's contentions that the statute in question is obnoxious to or violative of the provisions, or any provision, of the Constitution of this state; and, as the tax imposed by the statute is, in our opinion, a privilege tax, it is unnecessary for us to determine whether, if it were a property tax, the objections urged to its constitutionality by the appellees, would be sound.

It is insisted for the appellees that in Greene, Auditor v. Federal Coal Company, 184 Ky. 664, it was, in effect, held by this court that the tax in question is a property tax. While it was stated that the tax therein involved, which is the same here in question, was one imposed upon the indebtedness secured by the mortgage executed in that case, it will be discovered from a reading of the opinion that the statement referred to was incidently and inadvertently made, for the question whether the tax was a privilege tax, or a property tax, was not raised or considered in that case. There the Federal Coal Company had executed a mortgage upon a large body of land which it had purchased in a bankruptcy proceeding. The mortgage was recorded and the tax thereon paid. Subsequently a federal court adjudged that the deed under which the Federal Coal Company acquired title to the land, as well as the mortgage it had executed on the land, was void and both cancelled. Thereupon the Federal Coal Company sued Greene, the auditor, to recover the tax paid when the mortgage was recorded, on the ground that as it was imposed on the mortgage which was later declared invalid, it was improperly paid. The auditor by way of defense claimed that the tax was voluntarily paid on the mortgage and indebtedness secured by it, and that contention was sustained. The real grounds upon which the recovery of the tax was refused was that the Federal Coal Company was legally liable for the tax when paid; that it was privileged to pay it or not as it alone might have determined, but that having voluntarily paid the tax it was not legally entitled to re-

cover it back; and this conclusion was amply fortified by the numerous authorities cited in the opinion. So, it is patent that the inadvertent statement contained in the opinion, referred to, can have no controlling effect upon the decision of the instant case.

The case of State v. Am. Trust Co. (Tenn.), 208 S. W. 611, relied on by counsel for appellees, is not in conflict with the authorities, *supra*. While it held unconstitutional a statute of Tennessee, which imposed a tax upon the recording of mortgages, it was solely on the ground that the tax was in lieu of an *ad valorem* tax. The opinion, however, declared the mortgage recording tax, a privilege tax, and, in effect, further held that its constitutionality would have been upheld but for the reason stated.

An examination of other cases cited by appellees, decided in various states, will disclose that the statutes construed were radically different from that of this state, and why their provisions gave occasion for declaring the tax imposed by them a property tax. We also find ourselves unable to discover any merit in the appellees' final contention, that the statute under consideration violates article 1, of the fourteenth amendment to the federal Constitution; and in order to demonstrate that it does not in language or meaning deny to all persons, or any class of persons, "within the jurisdiction of the state of Kentucky the equal protection of the laws of the state," it is only necessary to apply to the statute the test supplied by the numerous decisions of the Supreme Court construing that amendment. One of the clearest opinions of that court on the subject is that of Am. Sugar Refining Co. v. Louisana, 179 U. S. 89, from which the following excerpt is quoted:

"The power of taxation under this provision was fully considered in Bell's Gap R. Co. v. Pennsylvania, 134 U. S. 232, 33 L. Ed. 892, 10 Sup. Ct. Rep. 533, in which it was said not to have been intended to prevent a state from changing its system of taxation in all proper and reasonable ways. It may, if it chooses, exempt certain classes of property altogether; may impose different specific taxes upon different trades or professions; may vary the rates of excise upon various products; may tax real and personal estate in a different manner; may tax vis-

ible property only, and not securities; may allow or not allow deductions for indebtedness.

"All such regulations, and those of like character, so long as they proceed, within reasonable limits and general usage, are within the discretion of the state legislature or the people of the state in framing their Constitution."

To the same effect are the following cases decided by the same court viz: Bell's Gap R. Co. v. Pennsylvania, 134 U. S. 232; Grazza v. Tierman, 148 U. S. 655, Mich. Central R. R. Co. v. Powers, 201 U. S. 248.

Viewed in the light furnished by the foregoing tests contained in the authorities, *supra*, the conclusion is inevitable, that the statute in question is in no wise obnoxious to the fourteenth amendment to the Constitution of the United States.

For the reasons indicated, the judgment is reversed and cause remanded, with directions to the circuit court to sustain the appellant's demurrer to the petition, as amended, and refuse the writ of mandamus prayed by the appellees. The whole court sitting.