COMMUNITY PUBLIC SERVICE CO. v.
JAMES et al.
No. 9320.

Court of Civil Appeals of Texas. Austin.

Nov. 18, 1942.

Rehearing Denied Jan. 6, 1943.

590

Bennett L. Smith, of Fort Worth, for appellant.

Gerald C. Mann, Atty. Gen., and Billy Goldberg, Harold McCracken, and Cecil C. Rotsch, Asst. Attys. Gen., for appellees.

McCLENDON, Chief Justice.

Mortgage Registration Tax Law case, Art. 7047e note, Vernon's Ann.Civ.St., Sec. 9, Art. IV of H.B.No.8, Ch. 495, p. 2080, Gen.Laws, 3d Called Sess. 44th Leg.1936, amended in 1939 by S.B. 24, c. 5, p. 630, Gen.Laws, Reg.Sess. 46th Leg., amended in 1941 by S.B. 97, Ch. 16, p. 27, Gen. Laws, 47th Leg.; and repealed in 1941 by H.B. 514, Ch. 449, p. 723, Gen.Laws 47th Leg. The suit which arose under the 1939 amendment was by appellant to recover the tax which it had paid under protest under Art. 7057b, Vernon's Ann. Civ.St. The appeal involves: validity of the law; effect of the repealing act; applicability of Art. 7057b to the suit; and the parties necessary thereto.

The salient features of the law as amended in 1939, stated substantially except where quoted, follow:

The tax was 10¢ on each $100 or fraction thereof over $200 on all obligations secured by lien instruments "which are filed or recorded in the office of the County Clerk under the Registration Laws of this State." Instruments securing obligations of $200 or less were expressly exempted. Instruments included were required to have tax stamps affixed to the amount of the tax before they were permitted to be filed for registration. When part of the lien property was located outside the state, the amount of the tax was based upon the proportionate value of the Texas property. "Except as to renewals or extensions of accrued interest" the tax did not apply to renewal or extension or refunding instruments theretofore stamped, and applied to only one instrument (that of the greater denomination) where several instruments contemporaneously executed secured one obligation. When once stamped an instrument might be recorded in any number of counties without being restamped. The law contained the following exemption clause: "This section shall not apply to instruments, notes, or other obligations taken by or on behalf of the United States or of the State of Texas, or any corporate agency or instrumentality of the United States, or of the State of Texas in carrying out a governmental purpose as expressed in any Act of the Congress of the United States or of the Legislature of the State of Texas, nor * * * to obligations or instruments secured by liens on crops and farm or agricultural products, or to livestock or farm implements, or an abstract of·judgment."

With reference to instruments which did not state the amount secured or which

showed that part of the lien property was outside the state, it provided that "the County Clerk shall require proof by written affidavits of such facts as may be necessary to determine the amount of the tax due."

Payment of the tax was to be evidenced by stamps provided by the State Treasurer, who was required to keep a supply on hand at all times "for sale to any person upon demand and payment therefor." He was also required upon request to "consign" stamps to the county clerks. The latter were required to keep a supply on hand for sale, and to remit monthly to the Treasurer (State Treasurer) receipts from sales, but were "entitled to retain as fees of office for handling said stamps" 5% of the amount not exceeding $100 in any calendar month.

Appellant, a Delaware corporation doing business in Texas under permit, in March, 1939, executed in Illinois to trustees, residents of that state, a mortgage covering property located in Coryell and other counties in Texas, and in three other states securing negotiable bearer bonds. The mortgage obligated appellant to record it in counties where the property was situated. The Texas property composed 71.7% of the total value of the lien property. The bonds were sold to investment dealers, all nonresidents of Texas. Before filing the mortgage for record appellant conferred with the Treasurer, was informed that the mortgage must be stamped before it could be registered, and the arrangement was made that the requisite amount of stamps would be purchased from the county clerk and paid for by appellant (under protest) by check payable to the joint order of the Treasurer and county clerk, he to endorse the check, transmit it to the Treasurer, who would cash it and deposit the proceeds in the suspense account, all in accordance with the provisions of Art. 7057b. This arrangement was carried out, the stamps were purchased December 10, 1940, and affixed to the mortgage and it was recorded in Coryell county. The suit was filed March 6, 1941, against the Treasurer and Attorney General. The county clerk was, by amendment, made a party defendant November 22, 1941, and signed a waiver of citation filed November 25, 1941.

Appellant has briefed the case under three points which urge the following substantially stated contentions:

1. The law imposes a property tax and is unconstitutional as applied in this case in that it is upon bonds or a mortgage owned and held outside and by nonresidents of Texas.

2. The law was repealed without a saving clause "and must be treated as though it never existed except as to transactions past and closed."

3. The law imposes double and discriminatory taxes and violates thereby the uniform taxation provisions of the Texas Constitution, Art. VIII, Secs. 1 and 2 Vernon's Ann.St., and the equal protection clause of the 14th Amendment to the Federal Constitution.

Appellees urge three counter points contending that:

1. The tax imposed is an excise tax on the privilege of recording the mortgage in Texas, and therefore the situs of the secured bonds is immaterial.

2. The tax became due and payable December 10, 1940, and the liability was not extinguished by subsequent (1941) repeal of the law.

3. The tax was not violative of the invoked State and Federal constitutional provisions.

Appellees also present two cross assignments asserting error of the trial court in not dismissing the suit because:

1. The county clerk was a necessary party defendant and was not made a party within 90 days after the tax was paid as required by Art. 7057b.

2. The tax was not paid to the head of a state department, and the suit was therefore not maintainable under Art. 7057b.

■ The tax in issue is not a property tax but an excise tax levied upon the privilege of admitting the included lien instruments to record under the registration laws of this state. City of Abilene v. Fryar, Tex.Civ.App., 143 S.W.2d 654. Regardless of the conflict (whether apparent or real) among decisions of other states construing similar tax levies, and conceding, arguendo, as appellant contends that this holding in the Fryar case is dictum, we have no substantial doubt as to its correctness. The issue whether a particular tax falls within the classification of a property or excise tax, as applied to an almost infinite variety of tax laws in the several states, has been a fruitful source of litigation, resulting in many conflicts of decision among

592

courts of last resort. A recent standard text (33 Amr. Jur., p. 326) states the 'distinguishing features of the two classes of taxes thus: "In the main, the distinction between a property tax and a license or privilege tax imposed for revenue is that the function of the property tax is to raise revenue by virtue of the fact that the property is within the jurisdiction of the taxing power, and no condition or restriction is imposed thereby upon the use of the property taxed, while the license or privilege tax, even though also passed to raise revenue, is imposed upon the right to exercise a privilege, and its payment is made a condition to the exercise, or continuance in the exercise, of the privilege, business, or vocation involved."

Quoting further from the same text: "Although license taxes usually affect property, and are sometimes made to depend upon the kind or amount of property employed, it is generally considered that a license tax is not a property tax, and that the two are distinguishable."

Many illustrations might be cited of taxes classified as excise taxes the *burden* of which *directly* falls upon property. A very apt one is our gross production tax (a severance tax) the burden of which falls upon the owner of the property produced in proportion to the extent of his ownership. See Group No. 1 Oil Corp. v. Sheppard, Tex.Civ.App., 89 S.W.2d 1021, error refused, and Trustees of Cook's Estate v. Sheppard, Tex.Civ.App., 89 S.W.2d 1021, 1026, error refused, affirmed by Federal Supreme Court in Barwise v. Sheppard, 299 U.S. 33, 57 S.Ct. 70, 81 L.Ed. 23; also Sheppard v. Stanolind Oil & Gas Co., Tex. Civ.App., 125 S.W.2d 643. That tax could be upheld only as an excise as distinguished from a property tax, but the *burden* was laid upon the owner of the property (and therefore upon the property itself), resulting in an exemption of so much of the tax as would fall upon the royalty and bonus interests of the State. Severance taxes are quite generally held to be excise taxes, although there is some authority to the contrary. See 33 Am.Jur., p. 327 and notes 3 and 4.

Similarly: inheritance taxes in which the tax burden falls *directly* upon the *owner* of property and which are assessed upon a valuation basis, are practically universally held to be excise taxes. State v. Hogg, 123 Tex. 568, 70 S.W.2d 699, 72 S.W.2d 593. Use taxes are also generally

so classified, as for example our automobile license tax. For all practical purposes an automobile would be of no value to the owner (except only for the purpose of disposition) if he were denied the privilege of operating it upon the public highways.

Analogous questions frequently arise in determining the validity of excise taxes as applied to interstate commerce. Where the tax *burden* is held to fall *directly* upon interstate commerce they are stricken down as beyond the powers of the states to impose. See Galveston, H. & S. A. R. Co. v. State, 210 U.S. 217, 28 S.Ct. 638, 52 L.Ed. 1031, distinguishing State of Maine v. Grand Trunk R. Co., 142 U.S. 217, 12 S.Ct. 121, 163, 35 L.Ed. 994.

■ Income taxes are clearly excise and not property taxes. Yet in the celebrated Pollock case (Pollock v. Farmers' L. & T. Co., 157 U.S. 429, 15 S.Ct. 673, 39 L.Ed. 759, which was the later occasion for the 16th amendment to the Federal Constitution) the Federal income tax law of 1894 was held to be a *direct* tax within the apportionment provision of the Federal Constitution in so far as it was predicated upon income from land. The gist of the Pollock case holding is thus stated in the recent case of People of State of New York ex rel. Cohn v. Graves, 300 U.S. 308, 57 S.Ct. 466, 468, 81 L.Ed. 666, 108 A.L.R. 721, upholding an income tax of New York as applied to rentals upon land in New Jersey: There the question for decision was whether a federal tax on income derived from rents of land is a direct tax requiring apportionment under article 1, section 2, clause 3 of the Constitution. In holding that the tax was 'direct', the Court did not rest its decision upon the ground that the tax was a tax on the land, or that it was subject to every limitation which the Constitution imposes on property taxes. It determined only that for purposes of apportionment there were similarities in the operation of the two kinds of tax which made it appropriate to classify both as direct, and within the constitutional command."

The court further said: "It is by a parity of reasoning that the immunity of income-producing instrumentalities of one government, state or national, from taxation by the other, has been extended to the income. It was thought that the tax, whether on the instrumentality or on the income produced by it, would equally burden the operations of government. * * * But

as we have seen, it does not follow that a tax on land and a tax on income derived from it are identical in their incidence or rest upon the same basis of taxing power, which are controlling factors in determining whether either tax infringes due process."

A striking illustration of divergence of view as to where the *direct burden* of an excise tax falls is found in the application of state gasoline sales taxes (paid by the dealer) to sales made to the Federal Government or its instrumentalities. Panhandle Oil Co. v. Mississippi, 277 U.S. 218, 72 L.Ed. 857, 48 S.Ct. 451, 56 A.L.R. 583, reversing 147 Miss. 663, 112 So. 584, and Grayburg Oil Co. v. Texas, 278 U.S. 582, 49 S.Ct. 185, 73 L.Ed. 519, reversing Tex. Com.App., 3 S.W.2d 427, which affirmed Tex.Civ.App., 286 S.W. 489. It is to be noted that the Panhandle case holding was itself a 5 to 4 decision.

We now consider the decisions dealing with mortgage registration tax. Several of the states have laws imposing such tax which have reached the courts of last resort for interpretation. The New York and Kansas laws were held to impose a property tax, those of Alabama, Kentucky, Oklahoma, Tennessee, and Virginia were held to impose an excise tax. A study of the opinions in which these laws were classified reveals marked differences in the provisions of the several laws which had controlling bearing upon the decisions reached.

The New York law was originally passed in 1906 as a substitute for the existing property tax on mortgages and was levied on mortgages thereafter recorded. In the Bennett case (Franklin Soc. v. Bennett, 282 N.Y. 79, 24 N.E.2d 854, 856) wherein a history of the tax law was given, it was held to be an ad valorem tax within the meaning of the 1938 constitutional amendment, Art. 16, § 3, providing that "Intangible personal property shall not be taxed ad valorem nor shall any excise tax be levied solely because of the ownership or possession thereof, except that the income therefrom may be taken into consideration in computing any excise tax measured by income generally." In reaching that conclusion the court placed emphasis upon two considerations: (1) that the law "has provided an effective form of economic compulsion to supplement the inducement by restricting, if not, indeed, prohibiting, the use of an unrecorded mortgage for any prac-

tical purposes"; and (2) that "In deciding whether the tax on mortgages falls within one class or the other as defined in the Constitution, we cannot ignore the fact that judicial characterization or classification of the mortgage tax had been made previously and had not been challenged." The last reference is to People v. Trust Co., 205 N.Y. 74, 76, 98 N.E. 207, decided in 1912, in which the tax was referred to as an excise tax but apparently treated as a property tax. That suit was against a trustee in a mortgage recorded prior to 1906 given to secure future issues of bonds under a provision of the law which imposed upon the trustee personal liability for the tax on such future issues.

The Kansas law (copied in full in L.R.A. 1916A, 849) was held to be a property tax and void under the Kansas constitution in Wheeler v. Weightman, 96 Kan. 50, 149 P. 977, 988, L.R.A.1916A, 846. As held in that case the law was manifestly passed as a property tax law to reach a class of property a large portion of which escaped taxation. The tax was payable on an annual basis and use restrictions were imposed to enforce its payment. Mortgages paying the tax were exempted from ad valorem taxation. The Wheeler case gives a history of attempts to reach intangibles in Kansas, and a very full review of pertinent decisions. Distinguishing between the Kansas law and those of Alabama and Virginia, the opinion reads:

"No amount of metaphysical involution can harmonize the Alabama and Virginia laws with the Kansas law. When a contribution is levied as the price of a privilege a person may pay the price and enjoy the privilege or forego the privilege and avoid paying the price. The contribution is not exacted unless the enjoyment of the benefits and advantages of the privilege is claimed. * * *

"The statute under consideration assumed that a mortgagee would desire to give notice of his lien and protect his security by filing his mortgage for record. Bringing his mortgage to the register of deeds for record would disclose its existence and form a juncture for the operation of the tax law. So the privilege of recording was used as a stalking horse, and nothing more. But no chances were taken. The statute is utterly indifferent to the subject of spreading mortgages upon the county records. It is of no conse-

594

quence under the statute whether the mortgage holder ever go near the office of the register of deeds or not. What the statute requires is that the mortgagee shall pay taxes on his mortgage to the county treasurer. Such payment entitles him to a ticket of admission to the register's office, which he may use or not, at his pleasure. But he must pay the tax to the county treasurer under penalty of having every legal quality of his mortgage destroyed. Incidental to this destruction is a prohibition against receiving the instrument for record and recording it."

The following decisions hold the mortgage recording tax laws of the respective states to impose excise and not property taxes: Alabama: Barnes v. Moragne, 145 Ala. 313, 41 So. 947; Lee v. State Tax Comm., 219 Ala. 513, 123 So. 6; also Crosland case, infra. Kentucky: Middendorf v. Goodale, 202 Ky. 118, 259 S.W. 59; Louisville G. & E. Co. v. Shanks, 213 Ky. 762, 281 S.W. 1017. Oklahoma: Trustees', etc., Ins. Corp. v. Hooton, 53 Okl. 530, 157 P. 293, L.R.A.1916E, 602. Tennessee: State v. American Trust Co., 141 Tenn. 243, 208 S.W. 611. Virginia: Pocahontas C. C. Co. v. Commonwealth, 113 Va. 108, 73 S.E. 446.

Except as to the Crosland case (Crosland v. Federal Land Bank, 207 Ala. 456, 93 So. 7, reversed in Federal Land Bank v. Crosland, 261 U.S. 374, 43 S.Ct. 385, 67 L.Ed. 703, 29 A.L.R. 1) we shall not burden this opinion with a review of these cases. The question in that case was whether a mortgage given to a Federal Land Bank was exempted from the Alabama tax, under the Act of Congress creating it, 12 U.S.C.A. § 931, which expressly provided that: "First mortgages executed to Federal land banks * * * and farm loan bonds issued under the provisions of this chapter, shall be deemed and held to be instrumentalities of the Government of the United States, and as such they and the income derived therefrom shall be exempt from Federal, State, municipal, and local taxation." Six of the seven justices held the tax to be an excise tax; five of whom held the mortgage subject to the tax, one (McClellan) holding it exempt under the quoted provision of the Act. In reaching the conclusion that the mortgage was exempt from the tax (though held by him to be an excise) Justice McClellan pointed out that: The function of Federal Land Banks is to loan money secured

by first mortgages on land. They could not conduct that business without access to the state registration records. They have no power to pay a privilege tax; and they are precluded by Sec. 13 of the Act, 12 U.S.C.A. § 781, from passing this charge on to the borrower, the excise tax not being included in "legal fees and recording charges." The reasoning of this dissenting opinion appeals to us as sound. To apply the tax to the mortgage would in effect deprive the bank of the privilege of doing business in Alabama, or in any other state having a similar tax law. As noted the Alabama decision was reversed by the Federal Supreme Court. That court re-examined the question and reached the same conclusion in the Pittman case (Pittman v. Home Owners' Loan Corp., 308 U.S. 21, 60 S.Ct. 15, 84 L.Ed. 11, 124 A.L.R. 1263), with reference to a similar Maryland law as applied to a Home Owners Loan Corporation, the Act creating which contained a similar tax exemption, 12 U.S.C.A. § 1463(c). These decisions we believe are amply sustainable upon the holding that the tax laws involved were excise and not property taxes as was held in the dissenting opinion in the Alabama case. Especially is this true in view of the holding in the Coleman case (Louisville G. & E. Co. v. Coleman, 277 U.S. 32, 48 S.Ct. 423, 72 L.Ed. 770, considered below) that: "The Supreme Court of the United States will, in reviewing a decision of a state court upholding the validity of a state statute under the state Constitution, accept as conclusive the construction of the statute by the state court." (Emphasis added.)

That was said in relation to the mortgage registration tax law of Kentucky which was construed as an excise and not a property tax by the Supreme Court of that state. We believe the conclusion is also supported by the reasoning in the Pollock, Panhandle and Grayburg, Galveston, H. & S. A. R. Co., and other analogous decisions.

■ The distinction as to whether a mortgage registration tax properly falls within the one (property tax) or the other (excise tax) classification, lies, we believe, in the effect of the tax law as determined by its requirements and restrictions. If the tax is in effect upon the instrument itself, whether or not registered, and failure to pay the tax renders the instrument invalid or impairs its use, the registration

restriction being merely incidental as an enforcement measure, then the tax may properly be classified as a property tax. If, on the other hand, the tax is imposed solely upon the privilege of registration, and the validity or use of the instrument is not impaired or otherwise affected by failure to pay the tax, then clearly it is an excise tax.

■ To hold the tax in issue a property and not an excise tax would require a holding that this state is impotent to impose an excise tax upon the privilege of recording mortgages in this state. The law contains none of the elements of similar laws in other states which were held to control the decisions that they were property taxes. There is here no requirement that any instrument be recorded. Failure to register has no effect upon the validity or use of the instrument, or its enforcement in the Texas courts. Schulze v. Light, Tex.Civ.App., 143 S.W.2d 200. It is in no sense a subterfuge or a substitute for a property tax. The mortgage or debt it secures is not exempted from ad valorem taxation. It is a revenue measure, pure and simple, in the form of an excise tax levied upon the privilege of recording instruments in the public records of this state.

We next consider appellant's third point that the law imposes double and discriminatory taxes in violation of the invoked constitutional provisions.

■ Construed as an excise tax there is clearly no violation of the double taxation inhibition. See 1 Cooley on Taxation, 4th Ed., 488, 493.

■ The exemptions are: (1) instruments securing obligations of $200 or less; (2) those of State and Federal governments and instrumentalities; (3) those secured by liens upon agricultural products, livestock and implements; and (4) abstract of judgment liens.

As to the first exemption appellant relies largely upon the decision in the Coleman case, above, holding invalid, as containing an arbitrary classification, a Kentucky *excise* mortgage registration tax law because it exempted mortgages in which the indebtedness matured in less than five years. That was a 5 to 4 decision. The dissenting opinion of Mr. Justice Brandeis seems to us unanswerable. However that may be, we do not regard the decision as controlling here. There is, we think, an essential difference between classifying instruments upon the basis of the length of time the secured obligations run, and that of the amount secured. The latter character of exemption is common in income and inheritance tax laws. It is to be noted that the court was unanimous in the Coleman case in holding that the exemption of mortgages given to building and loan associations did not infringe the due process clause of the Federal Constitution.

There is no substantial merit in the contentions that exemptions 2 and 4 were beyond the power of the legislature to prescribe.

Exemption 3 was sustained in the recent case of Ex parte Tigner, 139 Tex.Cr. R. 452, 132 S.W.2d 885, affirmed Tigner v. State, 310 U.S. 141, 60 S.Ct. 879, 84 L.Ed. 1124, 130 A.L.R. 1321.

We overrule appellant's second point on two grounds:

■■ 1. The tax was due and payable at the time the stamps were purchased and the instrument filed for record with the stamps affixed, and appellant accorded thereby the privilege of registration. The subsequent repealing act therefore had no effect upon the rights of the State to retain the tax money. Moreover, the tax was in fact already paid prior to enactment of the repealing act. That the payment was under protest was of no consequence, except only as conferring upon appellant the right to recover if it was illegally imposed and upon the grounds only stated in the protest.

■ 2. Since the tax liability had already accrued, it was beyond the power of the legislature to remit it, even had it expressly attempted so to do. State v. Pioneer O. & R. Co., Tex.Com.App., 292 S.W. 869.

■ The validity of the repealing act is upheld in No. 9326 of the same style, Tex. Civ.App., 166 S.W.2d 395, to the opinion in which we refer.

■ We overrule appellees' cross assignments for the following reasons: The tax was clearly one required to be paid to the head of a department of the State Government, the State Treasurer, who was charged with the duty of its collection. The stamp feature was merely a convenient method of showing payment of the tax, so as to admit the instruments to which the stamps were affixed to record.

The sale of stamps by county clerks was clearly what it was expressly stated to be, a "consignment," the clerks acting as agents of the Treasurer. This provision was manifestly to obviate the inconvenience and delay to stamp purchasers incident to purchasing direct from the Treasurer. The payment here was in fact to the Treasurer himself, the method employed having been adopted, no doubt, because the amount of the tax was required to be ascertained by the clerk. It was simpler to purchase the stamps from the clerk than to have him fix the amount, then make the purchase from the Treasurer, and then return the instrument to the clerk for record. Both officials concurred in the procedure and the Treasurer got the check, received the protest, cashed the check and deposited the proceeds in the suspense account. Only the Treasurer and Attorney General were necessary parties to the suit under Art. 7057b, and the suit was maintainable under that article.

The trial court's judgment is affirmed.

Affirmed.