FRANKLIN SOCIETY FOR HOME BUILDING AND SAVINGS, Appellant, v. JOHN J. BENNETT, JR., as Attorney-General of the State of New York, et al., Respondents.

Argued November 27, 1939; decided December 28, 1939.

*James A. Davis* and *Leon Quat* for appellant. The tax on mortgages is an *ad valorem* tax on intangible personal property and as such is prohibited by section 3 of article 16 of the State Constitution. (*People ex rel. Eisman* v. *Ronner,* 185 N. Y. 285; *People ex rel. McKnight* v. *Union B. & P. Co.,* 63 Misc. Rep. 132; *Federal Land Bank* v. *Crosland,* 261 U. S. 374; *Pittman* v. *Home Owners Loan Corp.,* 308 U. S. 21; *Ackerman* v. *Hunsicker,* 85 N. Y. 43; *Matter of Mechanics' Bank,* 156 App. Div. 343; *Mutual Life Ins. Co.* v. *Nicholas,* 144 App. Div. 95; *Flint* v. *Stone Tracy Co.,* 220 U. S. 107; *Moyer* v. *Hinman,* 13 N. Y. 180; *Wheeler* v. *Weightman,* 96 Kan. 50; *Seamen's Bank for Savings* v. *Fell,* 166 App. Div. 271; *People ex rel. Banner L. Co.* v. *State Tax Comm.,* 244 N. Y. 159; *People ex rel. B. & M. R. R.* v. *Loughman,* 227 App. Div. 361; 254 N. Y. 513; *People ex rel. New York State Gas & El. Corp.* v. *Gilchrist,* 209 App. Div. 771; 240 N. Y. 552.) Even if the mortgage tax be deemed a recording excise, it is unconstitutional as it is levied solely because of ownership. (*Federal Land Bank* v. *Crosland,* 261 U. S. 374; *Pollock* v. *Farmers' Loan & Trust Co.,* 157 U. S. 429.) Article 11 of the Tax Law conflicts with section 1 of the Fourteenth Amendment to the Constitution of the United States. (*Federal Land Bank* v. *Crosland,* 261 U. S. 374; *Pittman* v. *Home Owners Loan Corp.,* 308 U. S. 21.)

*John J. Bennett, Jr., Attorney-General* (*Henry Epstein* and *Jack Goodman* of counsel), for respondents. Article

11 of the Tax Law does not tax intangible personal property *ad valorem* within the meaning of section 3 of article 16 of the State Constitution, but imposes an excise tax on the privilege of recording mortgages. (*People* v. *Trust Co. of America*, 205 N. Y. 74; 208 N. Y. 463; *Macallen* v. *Massachusetts*, 279 U. S. 620; *James* v. *Dravo Contracting Co.*, 302 U. S. 134; *National Sav. & Loan Assn.* v. *Gillis*, 35 Fed. Rep. [2d] 386; *People ex rel. Cooper Union* v. *Gass*, 190 N. Y. 323; *People ex rel. Casavoy* v. *Dimond*, 121 App. Div. 559; *People ex rel. Clyde* v. *Wendell*, 197 App. Div. 913; 232 N. Y. 550; 262 U. S. 94; *Educational Films Corp.* v. *Ward*, 282 U. S. 379; *Matter of Mechanics' Bank*, 156 App. Div. 343; 209 N. Y. 526; *City of New York* v. *New York City Ry. Co.*, 193 N. Y. 543; *United States* v. *Jackson*, 280 U. S. 183; *People ex rel. Lent* v. *Carr*, 100 N. Y. 236; *Ames* v. *Kansas*, 111 U. S. 449; *Knowlton* v. *Moore*, 178 U. S. 41.) The tax imposed by article 11 does not violate the equal protection clause of the Fourteenth Amendment of the Constitution of the United States. (*Story* v. *Craig*, 231 N. Y. 33; *Louisville Gas & Electric Co.* v. *Coleman*, 277 U. S. 32.)

LEHMAN, J. The plaintiff is a savings and loan association, organized under the provisions of article X of the Banking Law (Cons. Laws, ch. 2). By section 386 (now § 380, subd. 5) of that article it is required to record immediately every mortgage taken by it. The Register of the County of Queens, the recording officer of that county, refused to accept four mortgages tendered to him by the plaintiff for record unless the plaintiff paid to him the amount of the " recording tax," which the Legislature had attempted to impose upon each mortgage recorded after the 1st day of July, 1906. (Tax Law [Cons. Laws, ch. 60], § 253.) The plaintiff claimed that under the Constitution of the State of New York and the Constitution of the United States, the tax could not lawfully be imposed, but paid the tax under protest. The controversy has been submitted to the Appellate Division of the Third Department upon an agreed

statement of facts and that court has sustained the validity of the tax.

The Legislature for more than a century has made provision for recording instruments affecting real property. (Laws of 1810, ch. 175; Revised Laws of 1813, ch. 97. Cf. *Felix* v. *Devlin*, 90 App. Div. 103.) Article 9 of the Real Property Law (Cons. Laws, ch. 50) now regulates the recording of such instruments and defines the rights and privileges of owners of recorded instruments. The advantage that may be acquired by recording is a compelling inducement to record and mortgages are withheld only in exceptional cases. Indeed, savings and loan associations like the plaintiff, which are regulated by the Banking Law, are allowed no choice there. They *must* record their mortgages. Other intangible personal property may easily be concealed from the tax collector; but few mortgages escape a tax collector, who lies in wait to demand the tax when the mortgage is recorded. A special tax upon mortgages, payable at the time when the mortgages are recorded, reaches a " form of intangible property, which is likely to evade taxation under the general property tax." That is the purpose and effect of the recording taxes which have become part of the taxing system of many States. (Cf. dissenting opinion of BRANDEIS, J., in *Louisville Gas & Elec. Co.* v. *Coleman*, 277 U. S. 32, 47.) A special tax on mortgages, payable when they are recorded and annually thereafter, was imposed by chapter 729 of the Laws of 1905. Though that statute required the application of a rule or system of taxation for mortgages recorded after July 1, 1905, different from that which was applied to those recorded before that date and to other personal property, yet such classification does not deprive the taxpayer of his property without due process of law, or deny him the equal protection of the law. (*People ex rel. Eisman* v. *Ronner*, 185 N. Y. 285.) The tax imposed by that statute was an annual tax " payable to the proper officer at the recording office where the mortgage is first offered for record in this state, until the same is satisfied of record in said office." (§ 296.)

In 1906 the Legislature passed a statute (Laws of 1906, ch. 532), which, the court has said, provided " a different scheme of mortgage taxation * * * to take effect July 1st of that year, and applicable to mortgages recorded on or after that date. It prescribed a *recording tax* of fifty cents on each hundred dollars in lieu of the *annual property tax* prescribed by the statute of 1905." (Italics are new.) (*People* v. *Trust Company of America*, 205 N. Y. 74, 76.) With few changes the provisions of the 1906 statute are now embodied in article 11 of the Tax Law. Lest the inducement to record offered by the Real Property Law should in some cases be nullified by reluctance to pay a recording tax, the Legislature, in section 258 of the Tax Law, has provided an effective form of economic compulsion to supplement the inducement by restricting, if not, indeed, prohibiting, the use of an unrecorded mortgage for any practical purposes.

Many of the provisions of the statute of 1906 now part of the Tax Law were contained, also, in chapter 729 of the Laws of 1905, which was supplanted by the later statutes. For the taxpayer the significant difference was that under the earlier statute the tax was payable annually; under the later statute, the tax is payable only once — at the time the mortgage is recorded. Upon payment of the tax the owner of the mortgage might secure the benefit of the recording acts. Until the tax was paid, the use of the mortgage was subject to the drastic restrictions upon its use which were imposed by the Tax Law. The " recording tax " was unquestionably intended as a substitute for the property tax previously imposed on mortgages as a species of personal property. It has been referred to as " a remnant of the old system of taxing personal property," and argument has been made that with the passing of all taxes on personal property this " remnant " of an abandoned system should be cast aside by the Legislatures. (Cf. Report of the New York State Commission for the Revision of the Tax Laws, Legislative Document [1932], vol. 18, No. 77, p. 219; Report of the Joint Legislative Committee on State

Fiscal Policies, Legislative Document [1938], No. 41, p. 222.) The Legislature has not been moved by such arguments. Article 11 of the Tax Law is unrepealed. When the Legislature enacted the statute imposing a " recording tax " on mortgages, the label or classification of the tax could not affect the power of the Legislature to enact it. In 1938 article XVI, entitled " Taxation," was added to the Constitution of the State and placed restrictions upon the taxing power exercised by the Legislature. In section 3 of that article it was provided, among other things, that " Intangible personal property shall not be taxed *ad valorem* nor shall any excise tax be levied solely because of the ownership or possession thereof, except that the income therefrom may be taken into consideration in computing any excise tax measured by income generally." Now the validity of the tax depends upon whether it is properly labelled or classified as a " recording tax," which is not levied solely because of the ownership or possession of a mortgage or, is, as the plaintiff maintains, an *ad valorem* tax on property, within the meaning of the constitutional provision.

The substantial rights of a taxpayer are ordinarily not affected by the form of a tax or by the characterization of the tax by the Legislature or the court. " The name by which the tax is described in the statute is, of course, immaterial. Its character must be determined by its incidents." (*Dawson* v. *Kentucky Distilleries & Warehouse Co.*, 255 U. S. 288, 292.) Substance rather than form should determine legal consequences and usually " the controlling test is found in the operation and effect of the statute as applied and enforced by the State." (Cf. *Gregg Dyeing Co.* v. *Query*, 286 U. S. 472, 476.) Where a taxpayer challenges in court his obligation to pay a tax which the State demands, the court is called upon to determine the operation and effect of the taxing statute upon the matters in dispute. Characterization by the court of a tax as a " tax on property " or as " an excise tax " or as a " recording tax " is a convenient method of describing the operation and effect of the tax statute —

its legal consequences — but it must be remembered that characterization or description is dictated by the legal consequences of the statute and never dictates those consequences. Opinions of the courts in which a tax is described or classified as a " tax on property " or as an " excise tax " must be read, not as intended to indicate a mutually exclusive classification to be applied in all cases, but rather as a summary of those characteristics which carry with them legal consequences of a particular kind.

To determine whether a tax should be placed in the class of taxes on property or in the class of excise taxes, there must be a definition of the line which divides the classes. We might without difficulty formulate a definition of a tax on property and a definition of an excise tax, but when we try to determine whether a particular tax falls in one class or another, difficulty must often arise, for the Legislature in adopting a system of taxation is, ordinarily, not concerned with the question whether a tax falls within a class which has been defined with scientific accuracy but is concerned with the question whether the tax in operation and effect will be fair to the taxpayer and produce a return satisfactory to the State. " The problems of government are practical ones and may justify, if they do not require, rough accommodations — illogical, it may be, and unscientific " (*Metropolis Theatre Co.* v. *City of Chicago*, 228 U. S. 61, 69) and a tax imposed by the Legislature may contain some features appropriate to a property tax and other features appropriate to an excise tax. So the " recording tax " imposed by the Tax Law of this State may in some aspects be properly described as the last remnant of an abandoned system of taxation of personal property — a substitute for an *ad valorem* annual tax on mortgages — yet in other aspects the tax has features which we associate with excise taxes. How it shall be classified depends upon which features should be emphasized and that, in turn, depends upon which features have most direct application and most potent effect in the particular matter which is the subject of the litigation.

The problem which we must solve is not whether scientifically and logically the tax on mortgages should be described as an *ad valorem* tax on one species of personal property or whether it should be described as an excise tax which is not levied solely because of ownership or possession of personal property but rather how the tax should be characterized for the very practical purpose of determining whether the tax falls within the class of taxes, described in the *Constitution*, which may not be imposed in this State. We have pointed out that this court has in *People* v. *Trust Company of America (supra)* contrasted the system of taxation of mortgages under the statute of 1905 and the system of taxation of mortgages under the statute of 1906, which has not been materially changed. Though in many features the taxes are similar, yet because of other differing features this court has characterized the later tax as a *"recording tax"* which has been prescribed in lieu of the *"annual property tax"* prescribed by the statute of 1905. By emphasis on the feature that the tax is not an annual tax but is a tax payable only when a mortgage is recorded to obtain the benefit of the recording acts or to rid the mortgage or its owner from the penalties and drastic restrictions resulting from failure to record, the court in effect has placed one tax in the class of *ad valorem* taxes on property and the other in the class of excise taxes not levied solely because of the ownership or possession of the mortgage.

We are told that what was there said is *dictum* and is not legally sound. Decisions of the Supreme Court of the United States are cited where similar statutes of other States have been described and classified in other manner. (*Federal Land Bank* v. *Crosland*, 261 U. S. 374; *Pittman* v. *Home Owners Loan Corp.*, 308 U. S. 21.) On the other hand, it may be pointed out that in many States similar taxes have been characterized and classified as excise taxes imposed for the privilege of recording. (*Barnes* v. *Moragne*, 145 Ala. 313; *Lee* v. *State Tax Commission*, 219 Ala. 513; *Middendorf* v. *Goodale*,

202 Ky. 118; *Louisville Gas & Elec. Co.* v. *Shanks*, 213 Ky. 762; *Mutual Benefit Life Ins. Co.* v. *County of Martin*, 104 Minn. 179; *Trustees, Executors & Securities Ins. Corp.* v. *Hooton*, 53 Okla. 530; *State ex rel. Hauk* v. *American Trust Co.*, 141 Tenn. 243; *Pocahontas Collieries Co.* v. *Commonwealth*, 113 Va. 108; *Union Trust Co.* v. *Common Council of City of Detroit*, 170 Mich. 692, but cf. *Wheeler* v. *Weightman*, 96 Kan. 50.)

We may assume, *arguendo*, that what we said in *People* v. *Trust Company of America* (205 N Y. 74), is a *dictum* and that other characterization or classification would not only be justified but might, logically, be sounder; yet the significant fact would still remain that the characterization was made and that nothing said or decided in *People* v. *Trust Company of America* (208 N. Y. 463) or in any other case has weakened the force of the characterization or classification. It has not been challenged here and it has been followed in other jurisdictions.

In deciding whether the tax on mortgages falls within one class or the other as defined in the Constitution, we cannot ignore the fact that judicial characterization or classification of the mortgage tax had been made previously and had not been challenged here. The language of the Constitution must be read in the light of that circumstance. We conclude that the court below has correctly decided that the prohibited class of taxes as defined by the Legislature was never intended to include a tax which might reasonably be excluded from that class and which this court has said falls into another class.

We have passed upon the claim that article 11 of the Tax Law conflicts also with section 1 of the Fourteenth Amendment of the Constitution of the United States, and we have rejected the claim.

The judgment should be affirmed, with costs.

CRANE, Ch. J., LOUGHRAN and FINCH, JJ., concur; HUBBS and RIPPEY, JJ., dissent; O'BRIEN, J., taking no part.

Judgment affirmed.