[980 NE2d 473, 956 NYS2d 425]

HUDSON VALLEY FEDERAL CREDIT UNION, Appellant, v NEW YORK
STATE DEPARTMENT OF TAXATION AND FINANCE et al.,
Respondents.

Argued September 4, 2012; decided October 18, 2012

2

## POINTS OF COUNSEL

*K&L Gates LLP*, New York City (*Eli R. Mattioli, Darian Alexander, Anthony P. Badaracco* and *Sarah P. Kenney* of counsel), and *Quartararo & Lois PLLC*, Fishkill (*Dale J. Lois* and *Paul Quartararo* of counsel), for appellant. I. 12 USC § 1768 prohibits the imposition of New York mortgage recording taxes on mortgages granted to federal credit unions. (*St. Lawrence Univ. v Trustees of Theol. School of St. Lawrence Univ.*, 20 NY2d 317; *Gwaltney of Smithfield, Ltd. v Chesapeake Bay Foundation, Inc.*, 484 US 49; *Good Samaritan Hospital v Shalala*, 508 US 402; *Hartford Underwriters Ins. Co. v Union Planters Bank N.A.*, 530 US 1; *United States v Ron Pair Enterprises, Inc.*, 489 US 235; *Robinson v Shell Oil Co.*, 519 US 337; *Miller v French*, 530 US 327; *Sander v Alexander Richardson Invs.*, 334 F3d 712; *Knott v McDonald's Corp.*, 147 F3d 1065; *United States v State of Michigan*, 851 F2d 803.) II. As federal instrumentalities, federal credit unions are immune from New York mortgage recording taxes under the Supremacy Clause. (*Director of Revenue of Mo. v CoBank ACB*, 531 US 316; *McCulloch v Maryland*, 4 Wheat [17 US] 316; *United States v State of Michigan*, 851 F2d 803; *Federal Land Bank of New Orleans v Crosland*, 261 US 374; *Pittman v Home Owners' Loan Corp.*, 308 US 21; *Austin v Aldermen*, 74 US 694; *United States v San Diego County*, 249 F Supp 321; *TI Fed. Credit Union v DelBonis*, 72 F3d 921; *Keifer & Keifer v Reconstruction Finance Corp.*, 306 US 381.)

*Eric T. Schneiderman, Attorney General*, New York City (*Brian A. Sutherland, Barbara D. Underwood* and *Cecelia C. Chang* of counsel), for respondents. I. The Federal Credit Union Act does not bar collection of recording taxes on mortgages securing federal credit union loans. (*Hale v State Bd. of Assessment & Review*, 302 US 95; *Yazoo & Mississippi Valley R. Co. v Thomas*, 132 US 174; *California State Bd. of Equalization v Sierra Summit, Inc.*, 490 US 844; *Matter of S.S. Silberblatt, Inc. v Tax Commn. of State of N.Y.*, 5 NY2d 635; *Franklin Socy. v Bennett*, 282 NY 79; *Dawson v Kentucky Distilleries & Warehouse Co.*, 255 US 288; *Matter of Citibank v State Tax Commn.*, 98 AD2d 929; *United States v Detroit*, 355 US 466; *Snyder v Wetzler*, 84 NY2d 941; *South Carolina v Baker*, 485 US 505.) II. Federal credit unions are not entitled to constitutional tax immunity as virtual arms of the United States Government. (*United States v New Mexico*, 455 US 720; *Matter of Continental Bank Intl. v City of N.Y. Dept. of Fin.*, 69 NY2d 281; *Graves v New York ex rel. O'Keefe*, 306 US 466; *Director of Revenue of Mo. v CoBank*

*ACB*, 531 US 316; *First Agricultural Nat. Bank of Berkshire Cty. v State Tax Comm'n*, 392 US 339; *TI Fed. Credit Union v DelBonis*, 72 F3d 921; *United States v State of Michigan*, 851 F2d 803; *Matter of City of New York v Tully*, 88 AD2d 701; *Matter of Hotel Waldorf-Astoria Corp. v State Tax Commn.*, 86 AD2d 330.)

*Alicia M. Simmons*, New York City, *Sarah S. Normand* and *Preet Bharara* for United States of America, amicus curiae. I. The lower court's interpretation of section 122 of the Federal Credit Union Act (12 USC § 1768) is inconsistent with the statute's plain language. (*Rosner v Metropolitan Prop. & Liab. Ins. Co.*, 96 NY2d 475; *McCulloch v Maryland*, 17 US 316; *California Credit Union League v City of Anaheim*, 95 F3d 30, 520 US 1261; *United States v State of Michigan*, 851 F2d 803; *United States v State of Maine*, 524 F Supp 1056; *First Fed. Sav. & Loan Assn. of Boston v Tax Comm'n of Mass.*, 437 US 255; *Federal Land Bank of St. Paul v Bismarck Lumber Co.*, 314 US 95.) II. Even under the lower court's interpretation of section 122 of the Federal Credit Union Act (12 USC § 1768), New York's mortgage recording tax is an exempted tax on a federal credit union and its property. (*Pittman v Home Owners' Loan Corp.*, 308 US 21; *Federal Land Bank of New Orleans v Crosland*, 261 US 374; *Laurens Fed. Sav. & Loan Assn. v South Carolina Tax Comm'n*, 365 US 517; *Franklin Socy. v Bennett*, 282 NY 79; *Mennonite Bd. of Missions v Adams*, 462 US 791; *Matter of S.S. Silberblatt, Inc. v Tax Commn. of State of N.Y.*, 5 NY2d 635; *People v Trust Co. of Am.*, 205 NY 74.)

*Michael A. Lanotte*, General Counsel, Credit Union Association of New York, Albany, and *Henry C. Meier, Eric Richard*, General Counsel, Credit Union National Association, Washington, D.C., and *Kristina A. Del Vecchio* for Credit Union Association of New York and another, amici curiae. I. New York State's mortgage recording tax is an unconstitutional tax on the power given to federal credit unions to provide mortgages. (*Connecticut Nat. Bank v Germain*, 503 US 249; *Richards v Ashcroft*, 400 F3d 125; *California v Central Pacific R. Co.*, 127 US 1; *Owensboro Nat. Bank v Owensboro*, 173 US 664; *Railroad Co. v Georgia*, 98 US 359; *Trustees of Dartmouth College v Woodward*, 17 US 518; *Williams v City of Talladega*, 226 US 404; *Telegraph Co. v Texas*, 105 US 460; *McCulloch v Maryland*, 17 US 316; *Osborn v Bank of United States*, 22 US 738.) II. Federal credit unions are federal instrumentalities. (*Department of Employment v United States*, 385 US 355; *United States v State of*

*Michigan,* 851 F2d 803; *TI Fed. Credit Union v DelBonis,* 72 F3d 921; *United States v State of Maine,* 524 F Supp 1056; *California Credit Union League v City of Anaheim,* 95 F3d 30, 520 US 1261, 190 F3d 997; *Federal Land Bank of St. Paul v Bismarck Lumber Co.,* 314 US 95; *United States v New Mexico,* 455 US 720; *First Agricultural Nat. Bank of Berkshire Cty. v State Tax Comm'n,* 392 US 339; *McCulloch v Maryland,* 17 US 316; *Educational Films Corp. of America v Ward,* 282 US 379.)

*Dewey Pegno & Kramarsky LLP,* New York City (*David S. Pegno* of counsel), for The National Association of Federal Credit Unions, amicus curiae. I. Federal statute provides federal credit unions with a broad exemption from taxation, which the Appellate Division, First Department, improperly narrowed. (*Federal Land Bank of St. Paul v Bismarck Lumber Co.,* 314 US 95; *Federal Land Bank of New Orleans v Crosland,* 261 US 374; *Pittman v Home Owners' Loan Corp.,* 308 US 21; *Laurens Fed. Sav. & Loan Assn. v South Carolina Tax Comm'n,* 365 US 517; *Franklin Socy. v Bennett,* 282 NY 79; *First Agricultural Nat. Bank of Berkshire Cty. v State Tax Comm'n,* 392 US 339; *United States v State of Michigan,* 851 F2d 803; *California Credit Union League v City of Anaheim,* 95 F3d 30, 520 US 1261, 190 F3d 997; *United States v State of Maine,* 524 F Supp 1056.) II. Federal credit unions are also immune from taxation as federal instrumentalities. (*United States v New Mexico,* 455 US 720; *United States v State of Michigan,* 851 F2d 803; *TI Fed. Credit Union v DelBonis,* 72 F3d 921; *Director of Revenue of Mo. v CoBank ACB,* 531 US 316.)

*Arnold & Porter LLP,* New York City (*Kent A. Yalowitz* of counsel), for Federal Housing Finance Agency, amicus curiae. The federal statute at issue exempts federal credit unions from the mortgage recording tax. (*Gwaltney of Smithfield, Ltd. v Chesapeake Bay Foundation, Inc.,* 484 US 49; *Good Samaritan Hospital v Shalala,* 508 US 402; *United States v Ron Pair Enterprises, Inc.,* 489 US 235; *Hartford Underwriters Ins. Co. v Union Planters Bank, N.A.,* 530 US 1; *Violette v P.A. Days, Inc.,* 427 F3d 1015; *Department of Housing & Urban Development v Rucker,* 535 US 125; *Robinson v Shell Oil Co.,* 519 US 337; *United States v State of Michigan,* 851 F2d 803; *Director of Revenue of Mo. v CoBank ACB,* 531 US 316; *Miller v French,* 530 US 327.)

*Hollingsworth LLP,* Washington, D.C. (*Rosemary Stewart* of counsel), for American Bankers Association and another, amici

curiae. I. Hudson Valley Federal Credit Union seeks a novel interpretation of the Federal Credit Union Act in order to obtain a competitive business advantage over other financial institution lenders in New York. (*Laurens Fed. Sav. & Loan Assn. v South Carolina Tax Comm'n*, 365 US 517; *Pittman v Home Owners' Loan Corp.*, 308 US 21; *Federal Land Bank of New Orleans v Crosland*, 261 US 374.) II. There is no statutory basis for the tax immunity sought by Hudson Valley Federal Credit Union. (*Iselin v United States*, 270 US 245; *Lamie v United States Trustee*, 540 US 526; *Barnhart v Peabody Coal Co.*, 537 US 149; *Pittman v Home Owners' Loan Corp.*, 308 US 21; *Chevron US A. Inc. v Echazabal*, 536 US 73; *Whitfield v United States*, 543 US 209; *FCC v NextWave Personal Communications Inc.*, 537 US 293; *Franklin Nat. Bank of Franklin Square v New York*, 347 US 373; *Oklahoma Tax Comm'n v United States*, 319 US 598; *California State Bd. of Equalization v Sierra Summit, Inc.*, 490 US 844.) III. Because Congress expressly stated specific tax exemptions in the Federal Credit Union Act, it is unnecessary to conduct a constitutional analysis of Hudson Valley Federal Credit Union's status as an instrumentality of the United States Government. (*First Agricultural Nat. Bank of Berkshire Cty. v State Tax Comm'n*, 392 US 339.)

*Wade Beltramo, General Counsel, New York State Conference of Mayors and Municipal Officials*, Albany, and *Michael E. Kenneally, Jr.*, for New York State Conference of Mayors and Municipal Officials, amicus curiae. I. The New York State mortgage recording tax is a privilege tax that is outside the scope of the generic exemption from all taxation granted to federal credit unions by Congress. (*United States v Wells Fargo Bank*, 485 US 351; *Matter of S.S. Silberblatt, Inc. v Tax Commn. of State of N.Y.*, 5 NY2d 635; *Franklin Socy. v Bennett*, 282 NY 79.) II. Generic exemptions from "all taxation" apply only to direct taxation. (*United States v Wells Fargo Bank*, 485 US 351; *Laurens Fed. Sav. & Loan Assn. v South Carolina Tax Comm'n*, 365 US 517; *Pittman v Home Owners' Loan Corp.*, 308 US 21.) III. New York State mortgage recording tax is not a direct tax on mortgages. (*Matter of S.S. Silberblatt, Inc. v Tax Commn. of State of N.Y.*, 5 NY2d 635; *Franklin Socy. v Bennett*, 282 NY 79; *United States v Wells Fargo Bank*, 485 US 351.) IV. The cost of expanding the exemption will ultimately be borne by local governments in New York.

## OPINION OF THE COURT

GRAFFEO, J.

We are asked in this case whether mortgages issued by federal credit unions are subject to the New York State mortgage

recording tax under article 11 of the Tax Law. We answer in the affirmative.

In 2009, plaintiff Hudson Valley Federal Credit Union commenced this declaratory judgment action against defendants State Department of Taxation and Finance, its Commissioner and the State of New York (collectively, the Department). Hudson Valley asserted that it was not required to pay the mortgage recording tax (MRT) on mortgage obligations issued to members because (1) the Federal Credit Union Act (FCUA) exempts federal credit unions and their property from state taxation and (2) as instrumentalities of the United States, federal credit unions are immune from state taxation under the Supremacy Clause. Supreme Court granted the Department's motion to dismiss the complaint (28 Misc 3d 1001 [Sup Ct, NY County 2010]) and the Appellate Division affirmed (85 AD3d 415, 415 [1st Dept 2011]). Hudson Valley appeals by leave of this Court.

First enacted in 1906, Tax Law § 253 imposes a MRT of 50¢ for every $100 of principal debt on each mortgage of real property situated within the state.[1] Payment of the tax is a condition precedent to the proper recording of a mortgage (*see* Tax Law § 258 [1]). Although the Tax Law does not specify whether the lender or the borrower is obligated to pay the MRT, the Attorney General is authorized to commence an action for nonpayment against either the mortgagor or the mortgagee or both (*see* Tax Law § 266).

Hudson Valley's challenge to the imposition of the MRT relies primarily on federal statutory language contained in the FCUA, which provides that

> "[t]he Federal credit unions organized hereunder, their property, their franchises, capital, reserves, surpluses, and other funds, and their income shall be exempt from all taxation now or hereafter imposed by the United States or by any State, Territorial, or local taxing authority; except that any

---

1. Tax Law § 253 (1) reads as follows:
"A tax of [50¢] for each [$100] and each remaining major fraction thereof of principal debt or obligation which is, or under any contingency may be secured at the date of the execution thereof or at any time thereafter by a mortgage on real property situated within the state recorded on or after [July 1, 1906], is hereby imposed on each such mortgage, and shall be collected and paid as provided in this article."

real property and any tangible personal property of such Federal credit unions shall be subject to Federal, State, Territorial, and local taxation to the same extent as other similar property is taxed" (12 USC § 1768).

Hudson Valley urges us to interpret the phrase "[f]ederal credit unions . . . shall be exempt from all taxation" as excluding all mortgage loans issued by federal credit unions from payment of the MRT.

As a general rule, courts strictly construe federal tax exemptions in derogation of state taxing authority and decline to extend such exemptions beyond their express provisions (*see California State Bd. of Equalization v Sierra Summit, Inc.*, 490 US 844, 851-852 [1989]; *United States v Wells Fargo Bank*, 485 US 351, 354 [1988]; *Hale v State Bd. of Assessment & Review*, 302 US 95, 103 [1937]; *Yazoo & Mississippi Valley R. Co. v Thomas*, 132 US 174, 185 [1889]). Consistent with this principle, in other contexts, when Congress has intended to immunize "mortgages" of federally chartered lending entities from state taxation, it has done so explicitly. Examples of such express intent are found in the National Housing Act (*see* 12 USC § 1723a [c] [1], [2] [exempting from state taxation national mortgage associations, their "franchise(s), capital, reserves, surplus(es), *mortgages or other security holdings*, and income" (emphasis added)]); the National Consumer Cooperative Bank Act (*see* 12 USC § 3019 [a] ["The Bank, including its franchise, capital, reserves, surplus, *mortgages*, or other security holdings and income shall be exempt from taxation now or hereafter imposed by any State" (emphasis added)]); the Farm Credit Act of 1971 (*see* 12 USC § 2098 ["The *mortgages* held by the Federal land bank associations and the notes, bonds, debentures, and other obligations issued by the associations shall be considered and held to be instrumentalities of the United States and, as such, they and the income therefrom shall be exempt from all Federal, State, municipal, and local taxation" (emphasis added)]; 12 USC § 2023 [same for farm credit banks]); and the Higher Education Act of 1965 (*see* 20 USC § 1087-2 [b] [2] [the Student Loan Marketing "Association, including its franchise, capital, reserves, surplus, *mortgages*, or other security holdings, and income shall be exempt from all taxation now or hereafter imposed by any State" (emphasis added)]). Concomitantly, where Congress has used identical terminology in similar statutes to allow an exclusion, the absence of that terminology

in an analogous statute represents a strong indication of a contrary intent (*see Whitfield v United States*, 543 US 209, 216-217 [2005]; *FCC v NextWave Personal Communications Inc.*, 537 US 293, 302 [2003]; *Franklin Nat. Bank of Franklin Square v New York*, 347 US 373, 378 n 7 [1954]). Given the uniform choice of language in these other federal acts, one would expect that if federal credit union mortgages were intended to be excluded from state MRTs, such immunity would have been plainly stated in the FCUA. Instead, although the FCUA contains an extensive list of exemptions relevant to federal credit unions, it makes no mention of mortgages or loans of any kind (*see* 12 USC § 1768). This omission weighs against Hudson Valley's argument.[2]

In response to the lack of a statutory reference to mortgages, Hudson Valley submits that the term "property" in section 1768 can be construed broadly to encompass mortgage loans. Citing several United States Supreme Court decisions, it argues that mortgage recording taxes, such as the MRT, are taxes on "property" covered by the prohibition against state taxation. In the alternative, Hudson Valley contends that the MRT is tantamount to an illegal direct tax on the credit unions themselves. We do not agree.

The legislative history of the act refutes Hudson Valley's interpretation of the term "property." Congress enacted the FCUA in 1934, authorizing the formation of federal credit unions. The statute was amended three years later to address the disproportionate tax burden borne by those entities as compared to banks—resulting in the addition of the provisions at issue in 12 USC § 1768[3] (*see* Pub L 75-416, § 4, 51 US Stat 4 [75th Cong, 2d Sess, Dec. 6, 1937]). But from the act's inception and, more

---

**2.** The dissent contends that the U.S. Supreme Court's decision in *Federal Land Bank of St. Paul v Bismarck Lumber Co.* (314 US 95 [1941]) interpreting the Federal Farm Loan Act of 1916 requires that mortgages issued by federal credit unions should similarly be included in the FCUA. In *Bismarck*, the Supreme Court held that the Farm Loan Act was written in a manner that allowed the enactment to encompass additional tax exemptions because the use of the word "including" indicated that the list of those exemptions was not exhaustive (*id.* at 99-100). Since the structure of the FCUA differs, it should not be interpreted to permit courts to add new exemptions beyond those specified. Hence, *Bismarck* is distinguishable and the dissent's reliance on it is misplaced.

**3.** At the time, the act permitted state taxation of members' shares in federal credit unions as well as taxation of federal credit unions themselves and their property (*see* Pub L 73-467, § 18, 48 US Stat 1216, 1222 [73rd Cong, 2d Sess, June 26, 1934]). The states commonly taxed domestic banking corporations based primarily on their share capital (*see* HR Rep 1579, 75th

importantly, at the time of the 1937 amendment, federal credit unions were not empowered to issue mortgage loans to their members (*see* Pub L 73-467, § 7, 48 US Stat 1216, 1218 [73rd Cong, 2d Sess, June 26, 1934] [permitting credit unions only "(t)o make loans with maturities not exceeding two years"]). Congress could not have intended section 1768 to exempt from state taxation the particular lending activity at issue here—the issuance of mortgage loans—since credit unions could not engage in such activity. Furthermore, when Congress finally granted federal credit unions the power to offer residential mortgages (*see* Pub L 95-22, § 302, 91 US Stat 49 [95th Cong, 1st Sess, Apr. 19, 1977]), it did not amend section 1768 to specifically include "mortgages," nor did it otherwise articulate an intent to include mortgages within the definition of the "property" exempt from state taxation.

The Supreme Court holdings cited by Hudson Valley do not alter our conclusion (*see Laurens Fed. Sav. & Loan Assn. v South Carolina Tax Comm'n*, 365 US 517 [1961]; *Pittman v Home Owners' Loan Corp.*, 308 US 21 [1939]; *Federal Land Bank of New Orleans v Crosland*, 261 US 374 [1923]). In those cases, the Supreme Court concluded that the financial institutions involved—a federal savings and loan association, a home owners' loan corporation and a federal land bank—were exempt from state mortgage recording taxes by virtue of the federal tax exemption statutes pertaining to those institutions (*see Laurens*, 365 US at 521; *Pittman*, 308 US at 31-32; *Crosland*, 261 US at 378). In sharp contrast to the provisions of the FCUA, however, the federal acts examined in *Laurens*, *Pittman* and *Crosland* provided for an exemption from state mortgage recording taxation by direct statutory reference to "advances,"[4] "loans" and "mortgages" (*see* 12 USC § 1433; former Home Owners' Loan Act of 1933 § 4 [c] [Pub L 73-43, 48 US Stat 128, 130]; former Federal Farm Loan Act of 1916 § 26 [Pub L 64-158, 39 US Stat 360, 380]). As we have noted, section 1768 of the FCUA fails to incorporate similar terminology. Consequently,

Cong, 1st Sess at 2 [Aug. 17, 1937]). Because federal credit unions, unlike banks, were not permitted to accept deposits, their share capital represented a higher proportion of their total resources and, therefore, they paid significantly more in taxes (*see id.*). Congress amended section 1768 in order to level the playing field. Although credit unions soon obtained the authority to accept member deposits, the relevant portion of the statute has remained unaltered.

4. The Supreme Court held in *Laurens* that the term "advances" in 12 USC § 1433 is synonymous with "loans" (365 US at 521 n 9).

these Supreme Court cases are not controlling in determining congressional intent related to the FCUA.[5]

Hudson Valley further maintains that federal credit unions were established for the purpose of making credit more accessible for "provident or productive purposes" to "people of small" or modest means (*see* Pub L 73-467, Preamble, § 2, 48 US Stat 1216, 1216 [73rd Cong, 2d Sess, June 26, 1934]). It argues that permitting the MRT to apply to federal credit unions thwarts the FCUA's purpose and has serious financial ramifications for federal credit unions. This contention is unfounded.

Hudson Valley does not dispute that prior to the initiation of this action in 2009, it voiced no objection to the assessment of the MRT. Moreover, contrary to its assertions, there appears little danger that the MRT will drive federal credit unions out of business. Over the years, Congress has greatly expanded the powers of the credit unions and they now provide many of the same services traditionally offered by banks. For example, credit unions may accept deposits in "share" and "share draft" accounts (equivalent to bank savings and checking accounts respectively), issue first and second residential mortgages, make automobile and personal loans, extend lines of credit (including credit cards) and offer other services (*see* 12 USC § 1757; 12 CFR 701.21, 701.35). In 1998, Congress passed the Credit Union Membership Access Act (CUMAA) that enlarged their permissible membership (*see* Pub L 105-219, § 101, 112 US Stat 913, 914 [105th Cong, 2d Sess, Aug. 7, 1998], amending 12 USC § 1759 [b]). Thereafter, the National Credit Union Administration revised its regulations, making it easier for federal credit unions to qualify for community charters to serve larger geographic territories. According to a recent United States

---

**5.** Hudson Valley and amici also cite two Federal District Court decisions standing for the proposition that a state tax imposed on the recording of an entity's instrument is the same as a tax on the entity itself and, since the entity is exempt from "all taxation," it is necessarily exempt from the state recording tax (*see Hager v Federal Natl. Mtge. Assn.*, 882 F Supp 2d 107, 111-112 [D DC 2012]; *Hertel v Bank of Am. N.A.*, 897 F Supp 2d 579, 582, 585 [WD Mich 2012]). We note that at least one other Federal District Court examined the same issue and reached a contrary conclusion (*see Oakland County v Federal Hous. Fin. Agency*, 871 F Supp 2d 662, 669-670 [ED Mich 2012]). Further, we decline to follow *Hager* and *Hertel* in this case in light of our own prior holdings as to the nature of the MRT (*see Matter of S.S. Silberblatt, Inc. v Tax Commn. of State of N.Y.*, 5 NY2d 635, 640, 642 [1959]; *Franklin Socy. v Bennett*, 282 NY 79, 86 [1939]).

Government Accountability Office study, this has resulted in the dramatic growth in the number of credit unions with community-based charters (*see* U.S. Government Accountability Office, Report to Chairman, Committee on Ways and Means, House of Representatives, *Credit Unions: Greater Transparency Needed on Who Credit Unions Serve and on Senior Executive Compensation Arrangements* at 10 [GAO-07-29, Nov. 2006] [stating that membership in community-chartered federal credit unions had "nearly tripled" and the assets of those credit unions had "nearly quadrupled" between 2000 and 2006]).[6]

■ Lastly, we reject Hudson Valley's contention that it is a federal instrumentality entitled to exemption from the MRT under the Supremacy Clause. Although Hudson Valley cites authority in support of its argument that federal credit unions are federal instrumentalities,[7] the United States Supreme Court has clarified that constitutional "tax immunity is appropriate in only one circumstance: when the levy falls on the United States itself, or on an agency or instrumentality so closely connected to the Government that the two cannot realistically be viewed as separate entities, at least insofar as the activity being taxed is concerned" (*United States v New Mexico*, 455 US 720, 735 [1982]). Federal credit unions are private associations chartered under federal law. Although they are regulated by the National Credit Union Administration—a federal agency—they are wholly owned, funded and managed by their members (*see* 12 USC §§ 1753, 1759, 1761, 1761b). Members elect credit union boards of directors (*see* 12 USC § 1761). The directors have a significant amount of autonomy in administering credit unions' daily operations, including controlling investments, setting the

---

**6.** Instead of causing the negative consequences predicted by Hudson Valley, the elimination of the MRT on credit union mortgages could conceivably lure mortgage business away from banks by offering lower closing costs to credit union borrowers, thereby giving credit unions a competitive advantage over the banking industry in New York. Had Congress intended to alter the mortgage-lending playing field between federal credit unions and banks, it could have stated such an intention.

**7.** In each of those cases, the federal circuit courts considered the instrumentality status of federal credit unions in other contexts (*see California Credit Union League v City of Anaheim*, 95 F3d 30, 31 [9th Cir 1996] [holding that federal credit union employees were exempt from the transient occupancy tax applied to their hotel rates], *vacated on other grounds* 520 US 1261 [1997]; *TI Fed. Credit Union v DelBonis*, 72 F3d 921, 935 [1st Cir 1995] [rejecting an attempt to discharge, through bankruptcy, certain student loan debt held by a federal credit union]; *United States v State of Michigan*, 851 F2d 803, 807 [6th Cir 1988] [concluding that federal credit unions, as purchasers, were constitutionally immune from state sales tax]).

maximum number of share accounts and designating the classes of shares (*see* 12 USC § 1761b). Further, subject to some limitations contained in the FCUA, boards of directors have the authority to "determine the interest rates on loans [including mortgages], the security[ ] and the maximum amount which may be loaned and provided in lines of credit" (12 USC § 1761b [8]). We therefore do not view federal credit unions as so "closely connected" to the United States Government that they "cannot realistically be viewed as separate entities" with respect to mortgage-lending activities.

In sum, based on principles of statutory interpretation and the legislative history of the FCUA, we hold that federal credit union mortgages are not exempt from the State's MRT.

Accordingly, the order of the Appellate Division should be modified, with costs to defendants, by declaring that federal credit unions are not exempt from the New York State mortgage recording tax and, as so modified, affirmed.

READ, J. (dissenting). The Federal Credit Union Act (the FCUA) (12 USC §§ 1751-1795k) provides that *"[t]he Federal credit unions organized hereunder*, their property, their franchises, capital, reserves, surpluses, and other funds, and their income *shall be exempt from all taxation* now or hereafter imposed by" a government *"except* that any real property and any tangible personal property of such Federal credit unions shall be subject to Federal, State, Territorial, and local taxation to the same extent as other similar property is taxed" (*see* 12 USC § 1768 [emphases added]). I interpret this provision to mean what it plainly says: a federal credit union is exempt from all taxation except that upon real and tangible personal property.

New York's mortgage recording tax (MRT) (Tax Law § 253) is an excise tax on the privilege of transferring title, not a tax on the real property subject to the mortgage issued to secure a loan. Further, the MRT is not a tax on tangible personal property, such as portable machinery and equipment, tools, vehicles or other assets (other than land or buildings) with a physical form. Because the MRT is not a tax on real or tangible personal property—the only two carve-outs from the FCUA's exemption of federal credit unions from "all taxation"—New York may not impose the MRT on plaintiff Hudson Valley Federal Credit Union (Hudson Valley).

I.

The United States Supreme Court's decision in *Federal Land Bank of St. Paul v Bismarck Lumber Co.* (314 US 95 [1941]) confirms the correctness of this result. The Court there held that a statutory provision exempting a federal entity from all taxation does not allow the courts to create exceptions different or broader than those expressly stated by Congress. The statute considered in *Bismarck,* section 26 of the Federal Farm Loan Act, provided that

> *"every Federal land bank* . . . , including the capital and reserve or surplus therein and the income derived therefrom, *shall be exempt from Federal, State, municipal, and local taxation, except* taxes upon real estate held, purchased, or taken by said bank . . . First mortgages executed to Federal land banks, or to joint stock land banks, and farm loan bonds issued under the provisions of this Act, shall be deemed and held to be instrumentalities of the Government of the United States, and as such they and the income derived therefrom shall be exempt from Federal, State, municipal, and local taxation" (Pub L 64-158, § 26, 39 US Stat 360, 380 [emphases added]; *see* 12 USC former §§ 931-933).

At issue in *Bismarck* was whether building materials purchased by a federal land bank for use in the repair and improvement of foreclosed properties were subject to state sales tax. Like the MRT, a sales tax is an excise tax. In upholding imposition of the state sales tax, the North Dakota Supreme Court concluded that because section 26 contained specific exemptions for "capital and reserve or surplus therein and the income derived therefrom," all other taxes were authorized except for taxes on real estate (*see Federal Land Bank of St. Paul v Bismarck Lbr. Co.,* 70 ND 607, 627-628, 297 NW 42, 52 [1941]). This is the same reasoning employed explicitly by the Appellate Division and implicitly by the majority here (*see Hudson Val. Fed. Credit Union v New York State Dept. of Taxation & Fin.,* 85 AD3d 415, 417 [1st Dept 2011]; majority op at 8-9).

The Supreme Court reversed, concluding that "the broad exemption accorded [by section 26] to 'every Federal land bank' " barred the state from imposing any tax of any kind, unless it fell within the express statutory exception for real estate taxes (*see Bismarck,* 314 US at 100). The Court observed that

"[t]he unqualified term 'taxation' used in section 26 clearly encompasse[d the sales tax] within its scope," and thus afforded the entity an important "protection" that could not "be frittered away" (*see id.* at 99). Further, "[i]n reaching an opposite conclusion," the North Dakota Supreme Court "ignored the plain language, 'That every Federal land bank . . . shall be exempt from Federal, State, municipal, and local taxation' " (*id.*).

The Court emphasized that section 26's list of exempt items— i.e., "including the capital and reserve or surplus therein and the income derived therefrom"—simply illustrated and substantiated the breadth of the entity's general exemption from all taxes except for taxes on real estate. It did not limit or modify the general exemption (*id.* at 100 ["(T)he term 'including' is not one of all-embracing definition, but connotes simply an illustrative application of the general principle"]). Indeed, as the Court explained, "[i]f the broad exemption accorded to 'every Federal land bank' were limited to the specific illustrations mentioned in the participial phrase introduced by 'including', there would have been no necessity to except from the purview of [the statute] the real estate held by the land banks" (*id.*).

Finally, the Court noted that "[t]he additional exemptions granted to farm loan bonds and first mortgages executed to the land banks" did not suggest a contrary result: "The bonds [might] be held by private persons, and, of course, the general exemption of section 26 would not extend to them. Likewise *the general exemption would protect mortgages executed to the land banks and held by them*, but it would not survive a transfer" (*id.* [emphasis added]). In short, the general exemption from taxation for the federal land banks included mortgages "executed to . . . and held by" the entity, although the word "mortgages" did not appear in the "illustrative application of the general principle" (*cf.* majority op at 8 [ascribing significance to whether the word "mortgages" appears in illustrative lists in federal statutes]).

Thus, *Bismarck* establishes that (1) a statutory exemption of an entity from taxation protects that entity and its transactions from all taxes for which it would otherwise be liable; (2) a clause in such a statute listing specific items that are exempt from taxation is illustrative, not limiting; and (3) exceptions to the grant of immunity from taxation must be stated expressly, not implied by the courts. These principles control the outcome of this case. Section 122 of the FCUA (12 USC § 1768) grants federal credit

unions immunity from "all taxation." Although the FCUA does not use the word "including," the list of exemptions in the FCUA is either illustrative, or in addition to, the exemption of federal credit unions themselves, and in either case, the exemption for the entity itself is sufficient under *Bismarck*. Because the FCUA explicitly excepts only taxation upon real and tangible personal property, and the MRT does not fall into either category, collection of the MRT from plaintiff Hudson Valley is foreclosed (*see Bismarck*, 314 US at 99; *see also California Credit Union League v City of Anaheim*, 95 F3d 30, 31-32 [9th Cir 1996] [employees of federal credit unions immune under section 1768 from city's transient occupancy tax while in the city on business], *vacated on other grounds* 520 US 1261 [1997], *on remand* 190 F3d 997 [9th Cir 1999]; *United States v State of Michigan*, 851 F2d 803, 807 [6th Cir 1988] [federal credit unions held to be immune from portions of state sales tax]).

Applying *Bismarck*, the United States District Court for the District of Columbia recently held that Fannie Mae and Freddie Mac are exempt from the District of Columbia's recordation tax, reasoning that "to hold otherwise would contravene Supreme Court case law"—namely, *Bismarck*—"interpreting language [that was] virtually identical" (*see Hager v Federal Natl. Mtge. Assn.*, 882 F Supp 2d 107, 112 [D DC 2012]; *accord Hertel v Bank of Am. N.A.*, 897 F Supp 2d 579 [WD Mich 2012] [Fannie Mae and Freddie Mac are exempt from a Michigan recording tax]; *but see Oakland County v Federal Hous. Fin. Agency*, 871 F Supp 2d 662 [ED Mich 2012] [Fannie Mae and Freddie Mac are not exempt from Michigan's state and local real estate transfer taxes]). The provisions at issue in *Hager*—12 USC § 1723a (c) (2) (Fannie Mae) and 12 USC § 1452 (e) (Freddie Mac)—are likewise "virtually identical" to 12 USC § 1768. All three provisions exempt federally chartered entities from "all taxation," with specified exceptions for real property (Fannie Mae and Freddie Mac) and real and tangible personal property (federal credit unions).

In relying on *Bismarck* as "the on-point comparison for interpreting the statutes at issue," the District Court judge rejected the notion, also advanced by the State in this case, that the United States Supreme Court's decision in *United States v Wells Fargo Bank* (485 US 351 [1988]) required him to interpret "all taxation" to mean only "all direct taxation," and so

"compell[ed] the conclusion that Fannie Mae and Freddie Mac are subject to excise taxes," as was held in *Oakland County* (*Hager*, 882 F Supp 2d at 112-113). But as the judge pointed out, rather than construing an exemption that applied to a particular *entity*, the Court in *Wells Fargo* examined how a statutory exemption of certain *property*—"Project Notes"—from "all taxation" affected the computation of a federal estate tax, an excise tax (like the sales tax in *Bismarck* or the MRT here). He explained that

> "[b]ecause the *Wells Fargo* provision exempted *property* from taxation, and because an excise tax like the estate tax is imposed on something other than the property itself, the statutory provision did not reach the estate tax. In other words, the exemption at issue did not match up with the tax imposed.

> "The statutory provisions at issue in this case, on the other hand, exempt *an entity* from all taxation. A recordation tax for a deed [that Fannie Mae or Freddie Mac] records is indisputably a tax on that entity. It thus falls within the statutory exemption. An example illustrates the difference: if the statute had provided that 'Fannie Mae's real property shall be exempt from all taxation,' Fannie Mae would still be liable for the recordation tax because it is a tax on the real property's transfer rather than on the real property. But because the statute instead exempts Fannie Mae itself, neither its property nor its activities can be taxed" (882 F Supp 2d at 112).

Finally, the District Court judge remarked that, accepting the argument that Fannie Mae and Freddie Mac were subject to the District of Columbia's recordation tax "would lead to near absurdity" as "[i]t would leave the statutory provisions, so sweeping in their language, virtually meaningless: Fannie Mae and Freddie Mac would be free only from capitations and taxes upon personal property," since only these two taxes and a tax upon real property "are definitely known to be direct" (882 F Supp 2d at 113 [internal quotation marks and citations omitted]). He commented that "[i]f that were all Congress meant to accomplish, surely it would have done so with a narrowly

phrased provision rather than the sweeping 'all taxation' formulation it chose" (882 F Supp 2d at 113).

## II.

While pledging fidelity to the statutory text, the majority avoids section 1768's unambiguous meaning in several ways. First, as already noted, the majority emphasizes the absence of the word "mortgages" in section 1768 because "in other contexts, when Congress has intended to immunize 'mortgages' of federally chartered lending entities from state taxation, it has done so explicitly" (majority op at 8). This statement directly contradicts *Bismarck*, which makes clear that where an entity is exempt from all taxation, an illustrative list does not limit or modify this general exemption. And of course, as the majority correctly points out, the FCUA did not authorize federal credit unions to offer residential mortgages until 1977 whereas the exemption set out in section 1768 was added to the FCUA long before, in 1937 (*id.* at 9-10).

The majority then attaches great significance to Congress's neglect to amend section 1768 in 1977 so as "to specifically include 'mortgages,' [or to] otherwise articulate an intent to include mortgages within the definition of the 'property' exempt from state taxation" (*id.* at 10). This gets it exactly backwards, given *Bismarck*. That is, since section 1768 exempts federal credit unions from all state taxes except those imposed upon real and tangible personal property, Congress did not need to add the word "mortgages." Rather, Congress would have to have created a third exception to cover taxes on mortgages and/or the transfer of real property in order to *remove* such taxes from the general exemption for "all taxation *now or here-after imposed*" (emphasis added). Congress did not do this, and it is not for the courts to infer an additional exception.

Finally, the majority "decline[s] to follow *Hager* and *Hertel* . . . in light of our own prior holdings as to the nature of the MRT" in *Matter of S.S. Silberblatt, Inc. v Tax Commn. of State of N.Y.* (5 NY2d 635 [1959]) and *Franklin Socy. v Bennett* (282 NY 79 [1939]) (majority op at 11 n 5). We held in both cases that the MRT is not a property tax; rather it is "a tax on the privilege of recording the mortgage" (*Silberblatt*, 5 NY2d at 642), a species of excise tax (*Franklin Socy.*, 282 NY at 86). But in determining whether a federal statutory exemption precludes a particular form of state taxation, the characterization of the

tax is a question of federal, not state, law (*see First Agricultural Nat. Bank of Berkshire Cty. v State Tax Comm'n*, 392 US 339, 347 [1968]; *see also Federal Land Bank of New Orleans v Crosland*, 261 US 374, 378 [1923] [noting that the Supreme Court was not bound by the Alabama Supreme Court's characterization of that state's mortgage recording tax for purposes of determining whether a first mortgage was exempt from taxation under the Federal Farm Loan Act]). And the Supreme Court has held that a state mortgage recording tax is a tax on the mortgage (*see Crosland*, 261 US at 378-379; *Pittman v Home Owners' Loan Corp.*, 308 US 21, 31 [1939]).

In sum, 12 USC § 1768 exempts federal credit unions from all state taxation with the exception of taxes on real and tangible personal property, and the MRT is neither; therefore, plaintiff Hudson Valley, a federal credit union, is not subject to the MRT. The statute's text and federal case law, including Supreme Court precedent, call for this result. Accordingly, I respectfully dissent.

Chief Judge LIPPMAN and Judges CIPARICK, PIGOTT and JONES concur with Judge GRAFFEO; Judge READ dissents and votes to reverse in a separate opinion; Judge SMITH taking no part.

Order modified, etc.