| **Feder v Cornell Univ.** |
|:---:|
| 2026 NY Slip Op 30779(U) |
| March 4, 2026 |
| Supreme Court, New York County |
| Docket Number: Index No. 659093/2025 |
| Judge: Paul A. Goetz |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:  **HON. PAUL A. GOETZ**     PART     47

*Justice*

--------------------------------------------------------------------------------X

SAMANTHA FEDER,

                 Plaintiff,

- v -

CORNELL UNIVERSITY, LAURA E. RILEY, CURTIS ST. SURIN, NEWYORK-PRESBYTERIAN HOSPITAL, JOHN DOES 1-10, ABC ENTITIES 1-10

                 Defendant.

--------------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 659093/2025 |
| MOTION DATE | 10/13/2025 |
| MOTION SEQ. NO. | 001 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 15, 23, 25, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 39, 40, 41, 42, 43, 44

were read on this motion to/for       INJUNCTION/RESTRAINING ORDER       .

In this *inter alia* breach of an employment contract action, plaintiff moves pursuant to CPLR § 6301 to enjoin defendants from enforcing the non-renewal of contract notice (the notice) served on plaintiff, and from interfering with or modifying plaintiff's employment and medical staff privileges at defendants' locations prior to the issuance of the notice.[1]

## BACKGROUND

After twenty years of practicing obstetrics and gynecology (OB/GYN) in New York City, plaintiff was recruited to join defendants Cornell University a/k/a Weill Cornell Medical Center (WCM) and New York Presbyterian Hospital (NYP) (collectively, the hospital) (NYSCEF Doc No 2 [Complaint] ¶ 21). Defendant Laura E. Riley, MD, was the chair of OB/GYN at the

---

[1] Plaintiff also sought to enjoin defendants from interfering with plaintiff's ability to book patients for future appointments, but that issue was resolved by stipulation on February 5, 2026 (NYSCEF Doc No 85 ¶ 1 ["Defendants are preliminarily enjoined from interfering in any way with Plaintiff's ability to book patients"]).

[* 1]

hospital and participated in the recruitment process, along with chief administrative officer for WCM's OB/GYN department, defendant Curtis St. Surin (*id.* ¶ 22).

By letter dated August 17, 2020, plaintiff entered into an agreement with the hospital whereby plaintiff would be appointed, effective January 1, 2021 through December 31, 2023, to the full time faculty of WCM as assistant professor of clinical obstetrics and gynecology (*id.* ¶ 23; NYSCEF Doc No 4 [Employment Agreement]). The letter provided that "[c]onditions for renewal, if renewal is possible, will include funding and your performance," and "[i]f renewal is not possible, you will be given appropriate notice based on the guidelines set forth in the Academic Staff Handbook" (*id.* ¶ 23; Employment Agreement, p. 1). The academic staff handbook (the handbook) provides, *inter alia*, that "[r]enewable [a]ppointments are made with the prospect of renewal at the end of the initial term, such that a renewable appointment remains in effect unless and until there is notice of 'non-renewal,'" and staff members with under six years of employment such as plaintiff are entitled to six months' notice of non-renewal (NYSCEF Doc No 7 [Handbook] p. 97).

Though the parties did not enter a renewal agreement upon expiration of the initial term on December 31, 2023, plaintiff has been working for the hospital continuously since her appointment (Complaint ¶¶ 60-61). She alleges she had "never been subject to any formal discipline by the Hospital and has an exemplary track record of serving the medical needs of women" (*id.* ¶ 45).

On June 16, 2025, several weeks before the end of fiscal year 2025, plaintiff was invited to a meeting to discuss "alignment in the upcoming fiscal year" on June 18, 2025 (*id.* ¶ 46). On that date, plaintiff "was joined on video by Dr. Riley, Mr. St. Surin, and a Hospital Human Resources representative" (*id.* ¶ 48). During the meeting, Dr. Riley informed plaintiff that her

**659093/2025   FEDER M.D., SAMANTHA vs. CORNELL UNIVERSITY ET AL**                    **Page 2 of 9**
**Motion No.  001**

2 of 9

[* 2]

employment contract would not be renewed, meaning plaintiff's employment would end on June 30, 2026; plaintiff alleges that Dr. Riley stated that she "doesn't have to explain why" they opted for non-renewal (*id.* ¶ 50). The notice plaintiff received following the meeting also did not provide a reason for non-renewal (*id.* ¶ 55; NYSCEF Doc No 12).

Plaintiff alleges that the decision not to renew her contract was retaliatory based on plaintiff's protected whistleblower activities, as plaintiff "complained to Dr. Riley about [] patient care issues" and "took issue with how Dr. Riley was administering the Hospital's [Quality Assurance (QA)] program" (*id.* ¶¶ 98-115 [alleging that shortly after plaintiff complained about another doctor, "Dr. Riley attempted to turn the QA Committee against Dr. Feder"]).[2] Plaintiff further alleges that Dr. Riley had discriminatory motives for the non-renewal decision, as plaintiff is white and Dr. Riley, who is black, "expressed a particular interest in prioritizing the advancement of employees of color" (*id.* ¶ 117 [in May of 2021, Dr. Riley "pronounce[d] that her focus was on the academic promotion of Black physicians"]). Additionally, plaintiff alleges that Dr. Riley displayed "looks of disdain about Dr. Feder's [Jewish] religion and ethnicity," "was pointedly silent about the October 7, 2023 attacks and its impact on her Jewish staff," and "has knowingly scheduled mandatory OBGYN meetings and social events on Jewish holidays such as Yom Kippur and Hanukkah" (*id.* ¶¶ 123-24).

Plaintiff alleges that following receipt of the notice, Dr. Riley "set out to fabricate a false performance record in an attempt to cover up her unlawful conduct" (*id.* ¶ 129). Specifically, "[d]uring the July 7th, 2025 official Annual Faculty Review meeting, Dr. Riley's written review made several deliberately false statements against Dr. Feder" (*id.* ¶ 130 [also asserting plaintiff has "evidence proving the falsity of Dr. Riley's statements that will be provided in discovery"]).

---

[2] Plaintiff does not provide dates or details of the incidents described in this portion of her complaint but asserts that relevant records will be provided in discovery (*id.* ¶ 115).

**659093/2025   FEDER M.D., SAMANTHA vs. CORNELL UNIVERSITY ET AL**                    Page 3 of 9
**Motion No.  001**

[* 3]

Plaintiff states causes of action for: (1) breach of contract, (2) retaliation in violation of New York Labor Law § 740, (3) New York Labor Law § 741, (4) tortious interference with contract and/or advantageous business relationship, (5) tortious interference with prospective economic relations, (6) discrimination in violation of New York State Human Rights Laws (NYSHRL) and New York City Human Rights Laws (NYC HRL), (7) defamation and slander, (8) prima facie tort, (9) fraud and deceit, (10) civil conspiracy.

## DISCUSSION

"A preliminary injunction substantially limits a defendant's rights and is thus an extraordinary provisional remedy requiring a special showing" (*1234 Broadway LLC v West Side SRO Law Project, Goddard Riverside Community Ctr.*, 86 AD3d 18, 23 [1st Dept 2011]). To obtain a preliminary injunction pursuant to CPLR § 6301, a movant must demonstrate, by clear and convincing evidence: (1) a likelihood of success on the merits, (2) irreparable injury if a preliminary injunction is not granted, and (3) a balance of equities in their favor (CPLR § 6301; *Barbes Rest. Inc. v ASRR Suzer 218, LLC*, 140 AD3d 340, 431 [1st Dept 2016] [citing *Nobu Next Door, LLC v Fine Arts Hous., Inc.*, 4 NY3d 839, 840 [2005]]). "[T]he purpose of a preliminary injunction is to maintain the status quo," and the decision to grant or deny a preliminary injunction rests in the discretion of the motion court (*360 W. 11th LLC v ACG Credit Co. II, LLC*, 46 AD3d 367, 367 [1st Dept 2007]).

Plaintiff argues that she has demonstrated a likelihood of success on the merits of her claim that the non-renewal notice "breached the Employment Agreement because, absent impossibility, Dr. Feder's employment must be renewed" (NYSCEF Doc No 14, p. 4 [emphasis omitted]). She asserts that "[d]efendants have not, and cannot, show that it was 'not possible,' to renew the Employment Agreement," and "[w]hile funding or performance are also issues to be

659093/2025   FEDER M.D., SAMANTHA vs. CORNELL UNIVERSITY ET AL          Page 4 of 9
Motion No. 001

4 of 9

considered, Defendants have never claimed [] that there is a lack of funding or performance issues" (*id.*, p. 7). Plaintiff argues that without injunctive relief, "the Non-Renewal will strip Dr. Feder of her practice that she has worked over 25 years to build, her patient base, and her referral network which will severely disrupt continuity of care, and destroy Dr. Feder's professional reputation, career, patient relationships, future referral opportunities, the goodwill she has worked so hard to obtain over the last 25 years, and standing in the medical community" (*id.*, pp. 9-12 [noting that plaintiff's "newly pregnant patients will be delivering after the June 30, 2026 Non-Renewal date," meaning plaintiff "will be forced to turn away any new OB/GYN patients or take them on knowing that she will have to abandon them"]). Plaintiff argues that equities weigh in favor of an injunction "because monetary damages cannot repair or redress a destroyed physician-patient relationship, a destroyed career or a destroyed reputation, exactly what is at issue in this case" (*id.*, p. 12).

In opposition, defendants[3] assert that plaintiff seeks a *mandatory* injunction because she "seeks to require Cornell to . . . extend her employment beyond her current termination date" and therefore must meet a heightened standard (NYSCEF Doc No 29, p. 7). Defendants argue that plaintiff's breach of contract claim is unlikely to succeed because she "does not have tenure[;] [h]er appointment is renewably only [and] therefore can be terminated without cause, so long as she receives adequate notice – which she did" (*id.*, p. 16). They further assert that plaintiff's employment was not conditioned only on funding and her performance, as such conditions were part of a non-exhaustive list (*id.*, p. 15). Defendants argue that plaintiff has not shown irreparable harm in the absence of an injunction "because termination of a physician's employment is compensable with money damages and remediable at the end of a lawsuit" (*id.*, p. 10). Finally,

---

[3] Defendant NYP adopts the arguments set forth in the opposing brief of the other named defendants (NYSCEF Doc No 33).

**659093/2025   FEDER M.D., SAMANTHA vs. CORNELL UNIVERSITY ET AL**                                   **Page 5 of 9**
**Motion No.  001**

defendants argue that the equities balance in their favor because the requested relief would severely burden the hospital by "forc[ing] it to continue employing a physician" even though they have "serious concerns about Dr. Feder's performance, particularly her professionalism in dealing with other colleagues" (*id.*, pp. 16-17).[4]

Plaintiff fails to make the requisite showing that she is likely to succeed on the merits of her breach of contract claim. Plaintiff asserts that "absent impossibility, [her] employment must be renewed" (NYSCEF Doc No 14, p. 4 [emphasis omitted]), but that is not what the contract says. The appointment letter states that "if renewal is possible"—and defendants do not dispute that it is—"[c]onditions for renewal [] will include funding and your performance" (Employment Agreement, p. 1), indicating that renewal is contingent on conditions *besides* possibility. Though plaintiff states with more clarity in her reply that "Dr. Feder's appointment was renewable indefinitely, *subject only to* funding, performance, or impossibility" (NYSCEF Doc No 39, p. 2 [emphasis altered]), that reading is also unsupported by the language of the employment agreement, since it states that conditions for renewal *include* (but are not necessarily limited to) funding and plaintiff's performance (*Hudson Val. Fed. Credit Union v New York State Dept. of Taxation & Fin.*, 20 NY3d 1, 9 n.2 [2012] ["the use of the word 'includ[e]' indicate[s] that the list [is] not exhaustive"], citing *Federal Land Bank v Bismarck Lumber Co.*, 314 US 95 [1941]).

As noted *supra*, defendants assert that they have "serious concerns about Dr. Feder's performance, particularly her professionalism in dealing with other colleagues" (NYSCEF Doc No 29, p. 16 n.8). While they do not provide evidence displaying such interpersonal issues, it is

---

[4] In their brief, defendants assert that "[f]rom the outset of her employment in 2021, Dr. Feder had difficult interpersonal interactions with other employees"; in response to complaints from nurses in 2021 and 2022, the hospital offered plaintiff "professional coaching to improve her communication skills" "but issues persisted"; and "in March 2025, in response to a complaint about unprofessional interactions with staff," the hospital gave plaintiff further "guidance on treating staff and colleagues with respect," but "she did not appear to recognize any problem with her communication style or interpersonal interactions" (*id.*, p. 5). As noted in plaintiff's reply, defendants did not submit an affidavit or other evidence supporting these allegations.

**659093/2025  FEDER M.D., SAMANTHA vs. CORNELL UNIVERSITY ET AL**     **Page 6 of 9**
**Motion No.  001**

plaintiff's burden, as the movant seeking the "drastic remedy [of] [p]reliminary injunctive relief," to establish "a clear right thereto [] under the law and the undisputed facts upon the moving papers" (*Corporate Coffee Sys., LLC v R.U.G. Consulting, LLC*, 235 AD3d 829, 830 [2nd Dept 2025]). Plaintiff has not established that all conditions of renewal—even those which are unnamed—have been met such that defendants likely breached the employment agreement by declining to renew plaintiff's appointment, especially since the agreement affords them significant latitude in making such decisions (*compare* Employment Agreement, p. 1 [renewal of appointment depends on factors "includ[ing] funding and your performance"] *with* Handbook, p. 53 [staff appointed with tenure may only be dismissed "for just cause" or external factors such as reduction or elimination of programs or "financial exigency"]). Plaintiff therefore fails to satisfy the first required element for entitlement to a preliminary injunction: a likelihood of success on the merits.

Moreover, plaintiff has not demonstrated that she will suffer *irreparable* harm in the absence of a preliminary injunction. The harms she alleges (besides those relating to the part of her motion originally seeking to enjoin defendants from preventing her from booking future appointments, and those relating to harm to patients rather than harm to plaintiff)—i.e., damage to patient relationships, damage to reputation and career, and loss of referrals—are compensable by money damages (*Mabry v Neighborhood Defender Serv.*, 88 AD3d 505, 506 [1st Dept 2011] ["Plaintiff has not shown irreparable harm, since he will be entitled to reinstatement and back pay if he prevails on the merits and his termination is annulled. Moreover, absent extraordinary circumstances, [] damage to reputation [does] not constitute irreparable harm for the purposes of injunctive relief"] [internal citation omitted]; *Dhillon v Healthnow N.Y., Inc.*, 32 AD3d 1197 [4th Dept 2006] [trial court erred in granting motion seeking to enjoin defendant from not renewing

659093/2025   FEDER M.D., SAMANTHA vs. CORNELL UNIVERSITY ET AL
Motion No.  001

Page 7 of 9

plaintiff-physician's employment agreement because no irreparable harm shown]; *Abramo v HealthNow N.Y.*, 305 AD2d 1009, 1010 [4th Dept 2003] [plaintiff-physician's motion seeking to enjoin defendants from terminating his contract was properly denied because "[l]oss of employment, although most likely to cause severe hardship, does not constitute irreparable damage" and "[i]f plaintiff succeeds at trial, he can be adequately compensated with money damages for the loss of patients and fees"] [internal quotation marks and citations omitted]). Additionally, though plaintiff argues that "interference with the doctor-patient relationship is irreparable harm" (NYSCEF Doc No 14, pp. 8-9), the case she cites in support of this proposition is procedurally distinct (*Harris v Patients Med., P.C.*, 169 AD3d 433 [1st Dept 2019] [trial court properly denied motion seeking to enjoin plaintiff-physician from breaching certain restrictive covenants between her and defendant-hospital]).

Based on the foregoing, plaintiff failed to establish by clear and convincing evidence her entitlement to a preliminary injunction. Accordingly, plaintiff's motion will be denied.

NYP also "requests that this Court issue an order finding that NYPH is not a proper party to this case because Feder has failed to serve NYPH with the Summons and Complaint, the OTSC, any Motion papers, or even a single document on the docket" (NYSCEF Doc No 33). However, this relief is improperly sought in the form of an opposing brief rather than a cross-motion, and therefore it will not be considered.

## CONCLUSION

Based on the foregoing, it is

659093/2025   FEDER M.D., SAMANTHA vs. CORNELL UNIVERSITY ET AL
Motion No. 001

Page 8 of 9

8 of 9

ORDERED that plaintiff's motion for a preliminary injunction is denied.

20260304165354PGOETZ821D4691505D4A699DE01140A515AED4

__3/4/2026__
DATE

PAUL A. GOETZ, J.S.C.

| CHECK ONE: | | CASE DISPOSED | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|
| | | GRANTED | X DENIED | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | | REFERENCE |

**659093/2025   FEDER M.D., SAMANTHA vs. CORNELL UNIVERSITY ET AL**
**Motion No.  001**

Page 9 of 9